PEOPLE v LACALAMITA

Docket No. 286705. Submitted December 10, 2009, at Detroit. Decided December 15, 2009, at 9:20 a.m.

Anthony Lacalamita III was convicted by a jury in the Oakland Circuit Court, Rudy J. Nichols, J., of one count of first-degree premeditated murder, two counts of assault with intent to commit murder, and three counts of possession of a firearm during the commission of a felony. Defendant appealed, arguing that the verdict was against the great weight of the evidence, that the great weight of the evidence supported a verdict of guilty but mentally ill, and that the trial court erred by denying defendant's request to present a surrebuttal argument during closing arguments.

The Court of Appeals *held*:

1. There was conflicting evidence regarding defendant's mental illness and legal insanity and the jury properly exercised its authority to weigh the evidence, assess credibility, and resolve the conflicting evidence. The evidence presented did not preponderate heavily against the jury's finding of legal sanity and it would not be a miscarriage of justice to allow the verdict to stand. Conflicting testimony is an insufficient ground for granting a new trial.

2. The trial court did not abuse its discretion by denying defendant's request to present a surrebuttal argument. MCR 6.414(G) references only the prosecution's ability to make a rebuttal argument.

Affirmed.

1. MOTIONS AND ORDERS — NEW TRIAL — CONFLICTING TESTIMONY.

Conflicting testimony presented during a trial is an insufficient ground for granting a new trial.

2. TRIAL — CLOSING ARGUMENTS — REBUTTAL ARGUMENTS — SURREBUTTAL ARGUMENTS.

MCR 6.414(G) references only the prosecution's ability to make a rebuttal argument during closing arguments and does not provide for a surrebuttal argument by the defendant.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Jessica R. Cooper*, Prosecuting Attorney, *John S. Pallas*, Chief, Appellate Division, and *Marilyn J. Day*, Assistant Prosecuting Attorney, for the people.

*Peter Ellenson* for defendant.

Before: DONOFRIO, P.J., and SAWYER and OWENS, JJ.

PER CURIAM. Defendant appeals as of right his jury trial convictions of one count of first-degree premeditated murder, MCL 750.316, two counts of assault with intent to commit murder, MCL 750.83, and three counts of possession of a firearm during the commission of a felony, MCL 750.227b. Because the jury's verdict was not against the great weight of the evidence and because the trial court did not abuse its discretion by denying defendant's request to make a surrebuttal argument, we affirm.

This case arises from the fatal shooting of Madeline Kafoury and the nonfatal shootings of Paul Riva and Alan Steinberg on April 9, 2007, at the offices of Gordon Advisers in Troy, Michigan. Steinberg testified that he met defendant while working at Gordon Advisers because he had supervised defendant on a couple of audits. According to Steinberg, defendant's employment was terminated by Gordon Advisers a few days before the shootings. On the day of the incident, Steinberg was in his office at approximately 10:00 a.m. While Steinberg was standing in his office, he saw defendant standing in his doorway. Defendant, who was holding a shotgun, said hello and asked Steinberg to sit down and then asked whether Steinberg would like to be shot. Steinberg approached defendant and told him he could not have a gun in the office. Defendant then cocked the

gun, and when Steinberg grabbed it, defendant shot Steinberg in the upper thigh.

Riva, a partner at Gordon Advisers, testified that Kafoury was a receptionist at Gordon Advisers and was the receptionist on the day of the incident. Around 10:00 a.m. on the morning of the incident, Kafoury came into Riva's office and told him that defendant wanted to see the partners in the conference room. Riva walked out of his office and saw defendant, who pointed his gun at Riva and shot him in the chest. Defendant also shot Kafoury. Defendant then left the building and headed north on I-75 where he was eventually apprehended by the police.

Defendant first argues that the verdict was against the great weight of the evidence because the evidence clearly showed that he was legally insane at the time of the offense. We review for an abuse of discretion a trial court's grant or denial of a motion for a new trial on the ground that the verdict was against the great weight of the evidence. *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). An abuse of discretion occurs when a trial court chooses an outcome falling outside the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001). Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence. *People v Plummer*, 229 Mich App 293, 306; 581 NW2d 753 (1998). "Conflicting

testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998). Further, the resolution of credibility questions is within the exclusive province of the jury. *People v DeLisle*, 202 Mich App 658, 662; 509 NW2d 885 (1993).

As our Supreme Court explained in *People v Carpenter*, 464 Mich 223, 230-231; 627 NW2d 276 (2001):

> Legal insanity is an affirmative defense requiring proof that, as a result of mental illness . . . the defendant lacked "substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or conform his or her conduct to the requirements of the law." MCL 768.21a(1). Importantly, the statute provides that "[t]he *defendant* has the burden of proving the defense of insanity by a preponderance of the evidence." MCL 768.21a(3). [Emphasis in original.]

A "mental illness" is defined as "a substantial disorder of thought or mood that significantly impairs judgment, behavior, capacity to recognize reality, or ability to cope with the ordinary demands of life." MCL 330.1400(g).

Where expert testimony is presented in support of an insanity defense, the probative value of the expert's opinion depends on the facts on which it is based. *People v Dobben*, 440 Mich 679, 697; 488 NW2d 726 (1992). Further, a trial court must generally defer to a jury's determination, unless " 'it can be said that directly contradictory testimony was so far impeached that it "was deprived of all probative value or that the jury could not believe [the testimony]," or [the testimony] contradicted indisputable physical facts or defied physical realities . . . .' " *People v Musser*, 259 Mich App 215, 219; 673 NW2d 800 (2003), quoting *Lemmon, supra* at 645-646.

Here, Dr. Norman Miller, an expert for the defense, concluded, on the basis of his meetings with defendant

and a review of defendant's mental health history, that defendant was mentally ill and legally insane at the time of the incident. However, Dr. Carol Holden and Dr. Charles Clark, expert witnesses for the prosecution, each concluded that defendant was not legally insane or even mentally ill at the time of the incident. Dr. Holden and Dr. Clark both met with defendant and reviewed eyewitness accounts of the shooting, as well as reviewed defendant's past mental health history.

Dr. Miller opined that defendant was in a manic and delusional state at the time of the incident and believed that he was involved in a battle of good and evil. However, both Dr. Holden and Dr. Clark found no evidence that defendant was in a manic state because of his organized and systematic thinking and the calm and deliberate way in which he carried out the shootings. Dr. Holden and Dr. Clark both acknowledged that defendant had a long history of mental health treatment, but, unlike Dr. Miller, both concluded that defendant was not suffering from a mental illness as defined by MCL 330.1400(g) at the time of the incident. Rather, they each believed that defendant suffered from a personality disorder. Despite Dr. Miller's contradictory opinions, the testimony of Dr. Clark and Dr. Holden was not impeached to the extent that it was deprived of all probative value or that the jury could not believe it. Ultimately there was conflicting evidence regarding defendant's mental illness and legal insanity, and the jury exercised its authority to weigh the evidence, assess credibility, and resolve the conflicting evidence. The evidence presented did not preponderate heavily against the jury's finding of legal sanity and it would not be a miscarriage of justice to allow the verdict to stand.

Alternatively, defendant contends that the great weight of the evidence supported a verdict of guilty but mentally ill. However, as analyzed above, the prosecu-

tion and defense presented the jury with conflicting evidence about whether defendant was even mentally ill under the statute. The jury opted not to find defendant guilty but mentally ill. Again, conflicting testimony is an insufficient ground for granting a new trial, *Lemmon, supra* at 647, and the jury's verdict was not against the great weight of the evidence.

Finally, defendant argues that the trial court erred by denying defendant's request to present a surrebuttal argument because defendant had the burden to prove the only disputed issue of whether he was legally insane. Defendant contends that the trial court's decision denied him his constitutional right to present a defense and to make a closing argument. This Court reviews the trial court's ruling with regard to closing arguments for an abuse of discretion. *Wilson v Gen Motors Corp*, 183 Mich App 21, 27-28; 454 NW2d 405 (1990).

Further, " '[i]nterpretation of a court rule is a question of law that this Court reviews de novo.' " *People v Buie*, 285 Mich App 401, 416; 775 NW2d 817 (2009), quoting *Wilcoxon v Wayne Co Neighborhood Legal Services*, 252 Mich App 549, 553; 652 NW2d 851 (2002). When interpreting a court rule, this Court applies " 'the same rules as when we engage in statutory interpretation.' " *Id.* The goal of rule interpretation " 'is to give effect to the intent of the authors.' " *Id.* When interpreting a court rule, the first step is to consider the language of the rule. *Id.* " 'If the language of the court rule is clear and unambiguous, then no further interpretation is required or allowed.' " *Id.* " '[W]hen reasonable minds can differ on the meaning of the language of the rule, then judicial construction is appropriate.' " *Id.*

MCR 6.414(G) provides:

> After the close of all the evidence, the parties may make closing arguments. The prosecutor is entitled to make the

first closing argument. If the defendant makes an argument, the prosecutor may offer a rebuttal limited to the issues raised in the defendant's argument. The court may impose reasonable time limits on the closing arguments.

The plain language of the relevant court rule references only the prosecution's ability to make a rebuttal argument. Further, as the trial court noted, the prosecution's burden to prove the elements of the crime beyond a reasonable doubt was still greater than defendant's burden to prove insanity by a preponderance of the evidence. Therefore, on the basis of the plain language of MCR 6.414(G) and the fact that the prosecution carried the heavier burden, we conclude that the trial court's decision to prohibit defendant from making a surrebuttal argument was not an abuse of discretion. *Wilson, supra* at 27-28. In addition, defendant's constitutional arguments are misplaced because he was, in fact, permitted to present an insanity defense and was permitted to make a closing argument.

Affirmed.