# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KEISHAWN IVORY DISMUKE,

Defendant-Appellant.

UNPUBLISHED
January 21, 2016

No. 323678
Wayne Circuit Court
LC No. 14-002021-FC

Before: RIORDAN, P.J., and JANSEN and FORT HOOD, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84, malicious destruction of personal property with a value of $1,000 or more but less than $20,000 (MDPP), MCL 750.377a(1)(b)(*i*), and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 3 to 10 years' imprisonment for the AWIGBH conviction, two to five years' imprisonment for the MDPP conviction, and two years' imprisonment for the felony-firearm conviction. We affirm.

This case arises out of an incident that occurred on July 20, 2012, between 5:00 p.m. and 6:00 p.m. Nathaniel Eley was working at Cold Creation, a barber shop and salon. When Eley arrived at the salon, he parked his car in a public parking space on the street in front of Toriana's, another salon that was located two storefronts down. Defendant and his wife, Toriana Dismuke (Toriana), ran Toriana's. According to Eley, defendant was angry that Eley parked his car in front of Toriana's. Defendant began walking back and forth from Toriana's and Cold Creation holding an assault rifle. He repeatedly demanded that Eley "move [his] f****** car." Defendant came to the doorway of Cold Creation. Eley told defendant that he was not moving his car and that he had parked in a public parking space. Defendant went into a nearby store, and Eley went outside. At some point, defendant came out of the store. Defendant continued to tell Eley to move his car. Defendant told Eley, "If you don't move yo' car, I'm, I'ma light it up. Shoot, shoot your car up." Eley walked to his car to get cigarettes. He went toward the rear passenger side of the car. Defendant continued to demand that Eley move his car and threatened to shoot it. Toriana, who was also at the scene of the incident, yelled, "[S]hoot his young a**." Eley did not think defendant would shoot, and he did not intend to move his car. However, he also testified that he was afraid for his life when he saw defendant with a rifle. While Eley was standing next to the car, defendant fired five gunshots. According to Eley, he was standing near

-1-

the rear passenger side of the car or in between the passenger side of the car and the rear of the car when defendant started shooting. He also testified that he was walking back and forth between the rear passenger door and the back of the car when defendant fired the gunshots. The shots all struck the rear passenger side quarter panel of the car. Eley ran inside his shop and called the police. Then he flagged down a Michigan State Police (MSP) vehicle that happened by. Defendant immediately threw his rifle into a blue Dodge Durango, got into the vehicle, and drove away. He was gone by the time the MSP vehicle arrived. Eley was not armed at any point during these events.

Defendant testified at trial that on the day of the shooting, Eley was angry and threatened defendant and his family. Defendant went into Toriana's to avoid Eley. He then decided to leave. Defendant gathered his things, including the rifle he carried for security, left the store, and began to lock the door. Eley then approached and had something in his hand which he pointed at defendant. At this time, Eley was "about 39, 40 feet" away from defendant. Defendant testified that he pointed his rifle at Eley. Defendant "got a little annoyed," and fired at Eley's car. Alternately, defendant testified that he "got a little scared," partly because Eley threatened defendant's family, so he "g[ave] out some warning shots for [Eley] to back up." He explained that he fired the shots because he "was nervous and it was a new gun."

Defendant was convicted and sentenced as stated above. Following his convictions, defendant filed a motion for a new trial with the trial court, arguing that the evidence of his intent to harm Eley was insufficient to support the conviction for AWIGBH. Defendant also requested resentencing and argued that defense counsel was ineffective at sentencing for failing to submit various letters from various people documenting defendant's good deeds and for not mentioning that defendant suffered from mental health conditions. The trial judge denied this motion.

Defendant first argues that there was insufficient evidence to support his AWIGBH conviction. We disagree.

We review de novo a claim that there was insufficient evidence to support a defendant's conviction. *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014). "We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution had proved the crime's elements beyond a reasonable doubt." *Id*.

"The elements of AWIGBH are '(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder.' " *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014) (citation omitted). Assault is defined as " 'an attempt or offer with force and violence to do a corporal hurt to another.' " *People v Dillard*, 303 Mich App 372, 378; 845 NW2d 518 (2013) (citation omitted). Actual injury does not need to occur. *Id*. AWIGBH is a specific intent crime. *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005). "The intent to do great bodily harm less than murder is 'an intent to do serious injury of an aggravated nature.' " *Stevens*, 306 Mich App at 628 (citation omitted). "Because of the difficulty in proving an actor's intent, only minimal circumstantial evidence is necessary to show that a defendant had the requisite intent." *Id*. at 629. "Intent to cause serious harm can be inferred from the defendant's actions, including the use of a dangerous weapon or the making of threats." *Id*. Additionally, " '[e]vidence of flight is admissible to support an inference of "consciousness of guilt" and the term "flight" includes such

actions as fleeing the scene of the crime.' " *People v Unger*, 278 Mich App 210, 226; 749 NW2d 272 (2008) (citation omitted).

Defendant argues that there was insufficient evidence that he attempted or threatened to injure Eley and that he intended to injure Eley because the evidence shows he only intended to shoot Eley's car. However, there was sufficient evidence that defendant attempted to injure Eley and intended to cause great bodily harm. Eley testified that defendant shot at him five times, and the bullet holes in the car were near where Eley was standing when defendant began to shoot. Defendant also fled the scene of the incident when the MSP officer arrived. This evidence was sufficient to show that defendant attempted to injure Eley and intended to cause great bodily harm. See *Stevens*, 306 Mich App at 628-629; *Unger*, 278 Mich App at 226.

Defendant correctly points out that other evidence supports the inference that he only intended to shoot Eley's car, rather than Eley. For example, there was conflicting testimony regarding whether Eley was standing near where the bullets entered the car, and defendant threatened to shoot Eley's car, not Eley. However, "[t]his Court will not interfere with the trier of fact's determinations regarding the weight of the evidence or the credibility of witnesses." *Stevens*, 306 Mich App at 628. Taken in the light most favorable to the prosecution, there was sufficient evidence to support the trial court's determination that defendant committed AWIGBH. See *Stevens*, 306 Mich App at 628.

Defendant also argues that Eley did not think defendant was shooting at him, but rather, at his car. Although Eley testified that he was not hit with any bullets because defendant "just probably wanted to play with [him]," and was "[j]ust shooting around [him]," Eley also testified that defendant was firing the bullets at him. Regardless, defendant does not explain how Eley's understanding of defendant's intent is legally relevant to the issue of defendant's actual intent. Instead, for the reasons discussed above, there was sufficient evidence to establish defendant's intent. See *Stevens*, 306 Mich App at 628.

Defendant also points out that the judge said, while giving his verdict, "I cannot rule out a specific intent to do great bodily harm given the kind of weapon used and the fact that there were five rounds fired off." This, defendant argues, means the judge used the wrong legal standard and did not find defendant guilty of the intent element beyond a reasonable doubt. However, the trial court also stated, "[F]rom all the facts and circumstances surrounding the shooting I can readily infer and am convinced beyond a reasonable doubt that the defendant had an intent to cause great bodily harm to [Eley]." Considering this, it is clear that the trial judge did use the correct legal standard in deciding whether defendant intended to cause great bodily harm. See *Lane*, 308 Mich App at 57.[1]

---

[1] Defendant also argues that the trial court articulated an improper legal standard during the hearing on defendant's motion for a new trial. However, the trial judge stated while rendering the verdict in this case that he was convinced beyond a reasonable doubt that defendant had the specific intent to do great bodily harm. Thus, regardless of whether the trial court articulated an improper legal standard when it decided the motion for a new trial, the trial court articulated the

Defendant next argues that his AWIBGH conviction was against the great weight of the evidence. We disagree.

A new trial may be granted when a verdict is against the great weight of the evidence. MCR 2.611(A)(1)(e). Because this was a bench trial, the findings of fact that support the verdict are reviewed for clear error, and "regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." MCR 2.613(C). A challenge to the great weight of the evidence is reviewed for whether "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Unger*, 278 Mich App at 232. "Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). This Court has expressly stated that, under this standard, "[c]onflicting testimony and questions of witness credibility are generally insufficient grounds for granting a new trial." *Unger*, 278 Mich App at 232. In general, the trier of fact determines issues of witness credibility. *Id*.

The facts from the record defendant cites to support his argument in this issue are identical to the facts he cites for his prior issue: defendant fired the shots with a rifle at close range, which suggests that if defendant wanted to hit Eley he would have; Eley said defendant only meant to scare Eley, not shoot him; defendant threatened to shoot Eley's car, not Eley; Eley said he was standing by the rear passenger's side door when defendant began shooting, and the shots all struck the rear passenger's side of the car, indicating defendant was not shooting at Eley but at Eley's car. However, despite these facts, the trial court found that defendant had the intent necessary to convict him of AWIGBH. This finding does not "preponderate[] so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand" because Eley also testified that when defendant started shooting, defendant pointed the gun at Eley, and Eley was standing in the same place where he later discovered the bullet holes. See *Unger*, 278 Mich App at 232. While there is conflicting testimony regarding where Eley was when defendant fired, conflicting testimony does not justify granting a new trial. See MCR 2.613(C); *Unger*, 278 Mich App at 232. Thus, it was not clear error for the trial court, as trier of fact, to find defendant guilty of AWIGBH. See MCR 2.613(C).

Finally, defendant argues that his sentence is invalid and that defense counsel performed ineffectively at sentencing by failing to submit letters from members of the community documenting defendant's good deeds and advocating a light sentence, and by failing to present evidence that defendant suffered from mental health issues. We disagree.

A party may file a motion to correct an invalid sentence in the trial court. MCR 6.429(A). "The court may correct an invalid sentence, but the court may not modify a valid sentence after it has been imposed except as provided by law." *Id*. "A sentence is invalid when it is beyond statutory limits, when it is based upon constitutionally impermissible grounds, improper assumptions of guilt, a misconception of law, or when it conforms to local sentencing

proper legal standard when it rendered the verdict in this case. See *Lane*, 308 Mich App at 57; *Stevens*, 306 Mich App at 628.

policy rather than individualized facts." *People v Miles*, 454 Mich 90, 96; 559 NW2d 299 (1997). A sentence is also invalid if it is based on inaccurate information. *Id*.

Defendant argues that his sentence for AWIGBH is invalid since the trial court improperly convicted him of AWIGBH. However, as discussed above, there was sufficient evidence to support his AWIGBH conviction, and his conviction was not against the great weight of the evidence. Therefore, the sentence was valid. See MCR 6.429(A); *Miles*, 454 Mich at 96.

Defendant also argues that his trial attorney rendered ineffective assistance at sentencing. "A claim of ineffective assistance of counsel presents a mixed question of fact and constitutional law. We review factual findings for clear error, but we review de novo questions of constitutional law." *Unger*, 278 Mich App at 242. "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

Defendant cites no authority to support his argument that, because of defense counsel's failure to present evidence of defendant's mental illness and letters regarding defendant's good deeds, counsel's conduct fell below an objective standard of reasonableness. *Trakhtenberg*, 493 Mich at 51. Defendant "may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Payne*, 285 Mich App 181, 195; 774 NW2d 714 (2009).

Further, even if defendant could establish that his defense counsel performed unreasonably, he could not show that his sentence would have been different. Regarding defendant's claim that he suffered from mental illness, the presentence investigation report noted defendant's mental health problems, which means the trial court was aware of these problems when defendant was sentenced. In addition, at the hearing on defendant's motion for a new trial, the trial judge expressly stated that he could not remember the last time a letter affected one of his sentencing decisions. More generally, after considering defendant's argument, the trial judge indicated that nothing defendant argued in his motion would have affected the sentence imposed by the trial court. Thus, defendant fails to show a reasonable probability that any of defense counsel's alleged failings would have resulted in a different outcome. See *Trakhtenberg*, 493 Mich at 51.[2]

---

[2] Defendant also notes in his brief on appeal that the trial court held the time defendant was on "bench warrant status" against him. However, defendant does not raise any argument with regard to his assertion or explain how the court erred. Thus, the issue is abandoned. See *Payne*, 285 Mich App at 195 (" 'An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority.' ") (citation omitted).

Affirmed.

/s/ Michael J. Riordan
/s/ Kathleen Jansen
/s/ Karen M. Fort Hood