# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

SCOTT ALLEN CURRIE,

      Defendant-Appellant.

UNPUBLISHED
July 26, 2016

No. 322785
Oakland Circuit Court
LC No. 2013-248064-FC

Before: WILDER, P.J., and MURPHY and O'CONNELL, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of assault with intent to commit murder (AWIM), MCL 750.83, assaulting, resisting, or obstructing a police officer, MCL 750.81d(1), two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and possession of a firearm while intoxicated (PFWI), MCL 750.237. The trial court sentenced defendant to 10½ to 40 years' imprisonment for the AWIM conviction, one to two years' imprisonment for the resisting or obstructing conviction, two years' imprisonment for each felony-firearm conviction, and a 93-day term for the PFWI conviction. We affirm.

This case arises from an incident involving shots fired in a residential area after officers were dispatched to the location upon a phone call from defendant, who claimed that he had committed a crime. Clawson Police Department Officers Adam Nemer-Kaiser and Robert Schreiber were the first to respond, in separate vehicles, about five minutes after defendant reached the 9-1-1 dispatcher. Nemer-Kaiser, who arrived seconds before Schreiber, exited his vehicle and walked toward defendant's house. He testified that as he approached, he saw defendant look out the front window at him, exit his front door onto his porch, aim a "large, black" handgun directly at Nemer-Kaiser's chest, and fire a shot. Schreiber had parked his department vehicle in such a way that his dashboard camera recorded part of Nemer-Kaiser's vehicle on one side and part of the front of defendant's house on the opposite side. The jury viewed the dashboard camera recording at trial and during deliberations. The recording is the focal point of this appeal.

On appeal, defendant first argues that the trial court erred when it denied his motion for a new trial, where the dashboard camera recording established that his AWIM conviction was against the great weight of the evidence. We disagree.

"We review for an abuse of discretion a trial court's grant or denial of a motion for a new trial on the ground that the verdict was against the great weight of the evidence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). An abuse of discretion occurs when a trial court chooses an outcome falling outside the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003). A new trial may be granted if a verdict was against the great weight of the evidence. *People v Brantley*, 296 Mich App 546, 553; 823 NW2d 290 (2012). The determination of whether a verdict was against the great weight of the evidence requires review of the whole body of proofs. *People v Herbert*, 444 Mich 466, 475; 511 NW2d 654 (1993), overruled in part on other grounds *People v Lemmon*, 456 Mich 625; 576 NW2d 129 (1998). A verdict is against the great weight of the evidence when "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Lacalamita*, 286 Mich App at 469. With respect to whether a new trial is warranted on the basis that the verdict was against the great weight of the evidence, "[c]onflicting testimony and questions of witness credibility are generally insufficient grounds for granting a new trial." *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). Absent exceptional circumstances, the issue of witness credibility and the weighing of conflicting testimony must be left to the trier of fact. *Lemmon*, 456 Mich at 642-643. The exceptional circumstances recognized in *Lemmon* include the following: (1) the testimony contradicts indisputable physical facts or laws; (2) the testimony is patently incredible or defies physical realities; (3) the testimony is so inherently implausible that it could not be believed by a reasonable juror; or (4) the testimony has been seriously impeached so as to be deprived of all probative value and the case is marked by uncertainties and discrepancies. *Id*. at 643-644.

Defendant challenges only his AWIM conviction, conceding that his other convictions were not against the great weight of the evidence. Further, defendant only disputes the intent element of AWIM,[1] arguing that, in light of conflicts between witness testimony and video evidence, the jury could not have found that defendant possessed an actual intent to kill Nemer-Kaiser when he fired a gun from his porch. However, after a thorough review of Nemer-Kaiser's trial testimony and the contents of the dashboard camera recording taken from Schreiber's vehicle on the night of the incident, we are unable to find anything in the video to directly contradict Nemer-Kaiser's version of the incident.

Nemer-Kaiser testified that as he approached defendant's house, defendant stepped out onto his front porch, raised a handgun, and fired it directly at Nemer-Kaiser's chest. At defendant's trial, both Nemer-Kaiser and Schreiber testified that they clearly saw a muzzle flash

---

[1] The elements of AWIM are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. *People v Brown*, 267 Mich App 141, 147-148; 703 NW2d 230 (2005).

on the porch when defendant fired this first shot. While it is true, as defendant argues, that the video does not depict a discernible muzzle flash during the time defendant apparently fired his handgun, or a person standing on defendant's porch at any point, there are numerous reasons why this might be so. The video is very dark, and positioned at an angle such that it only captures one half of defendant's porch. Indeed, the video is so dark that nothing can be seen, at all, in the area of defendant's porch until after both shots were fired and Schreiber pointed his spotlight at the front of defendant's house. There are various unexplained flashes of light and variations in the ambient lighting surrounding defendant's house. There are also leaves and branches in the yard next door to defendant's, positioned directly between Schreiber's dashboard camera and defendant's porch. Thus, contrary to defendant's argument, the video recording does not prove that Nemer-Kaiser's version of events was fabricated, or even mistaken. The video proves only that the dashboard camera recording was of a poor quality and that the camera itself was inconveniently positioned for purposes of this case. The recording certainly did not present indisputable physical facts that directly contradicted Nemer-Kaiser's testimony.

Further, by the recording, Nemer-Kaiser's testimony was not so far impeached that it was deprived of all probative value or that the jury could not believe it. Indeed, much of the testimony and other physical evidence presented at defendant's trial supported Nemer-Kaiser's version of the incident. Nemer-Kaiser testified that he parked down the street from defendant's house about five minutes after defendant reported a rape at 9:50 p.m., and started walking in the direction of defendant's house. He had made it about 30 feet when he saw defendant step outside and fire a handgun in his direction. This testimony is consistent with the Schreiber dashboard recording, which demonstrated that it took about five seconds for Nemer-Kaiser to make it across the intersection. The 9-1-1 transcript clearly reflected a shot fired at 9:55 p.m., and immediately thereafter, defendant's live-in girlfriend, Vivian White, telling the 9-1-1 dispatcher that defendant fired a shot from the front porch. Schreiber, who arrived seconds after Nemer-Kaiser, testified that he clearly saw a muzzle flash on defendant's porch and heard the "big boom" of a gunshot. And the soundtrack of the otherwise useless dashboard camera recording from Nemer-Kaiser's car caught the first gunshot fired just after Nemer-Kaiser exited his vehicle. Nemer-Kaiser also testified that he turned on his flashlight and ran for cover immediately after hearing the first shot. Although no discernible muzzle flash is seen in the Schreiber recording and no gunshot can be heard, Nemer-Kaiser can clearly be seen turning on his flashlight as he moves toward the neighbor's vehicles at exactly the same time the 9-1-1 transcript confirms the first shot was fired.

Even if the contents of the video recording from Schreiber's dashboard camera cast doubt on Nemer-Kaiser's version of the incident, the determination of Nemer-Kaiser's credibility was properly left to the jury. *Unger*, 278 Mich App at 232. The jury heard Nemer-Kaiser's testimony and had the opportunity to view the Schreiber recording first at trial, and again during deliberations. The jury received proper instruction on the evaluation of witness credibility and what evidence may support a finding of intent. Without directly conflicting testimony or physical evidence, there is no basis to circumvent or question the jurors' determination.

Nemer-Kaiser's testimony alone was enough to support a finding of intent to kill. A fact-finder may infer an actual intent to kill "from the nature of the defendant's acts constituting the assault." *People v Brown*, 267 Mich App 141, 149 n 5; 703 NW2d 230 (2005) (citations and

quotation marks omitted). Such considerations include "the temper or disposition of mind with which they were apparently performed [and] whether the instrument and means used were naturally adapted to produce death." *Id.* (citation and quotation marks omitted). Defendant called 9-1-1 in order to report a purported crime that had not been committed, and he was well aware that the police would be arriving shortly to his home. He told the 9-1-1 dispatcher that he was "locked and loaded" and had two firearms in hand as he waited for the police to arrive. From this undisputed evidence, the jurors could have drawn the reasonable inference that defendant intended to lure police officers to his home and engage them in a firefight. There was no evidence presented at trial to suggest that defendant could not see Nemer-Kaiser when he fired the first shot. Indeed, Nemer-Kaiser testified that defendant aimed his handgun directly at Nemer-Kaiser's chest, one of the most vulnerable parts of the officer's body. The fact that defendant used a gun, an instrument "naturally adapted to produce death," supports an inference that defendant acted with an actual intent to kill Nemer-Kaiser. *Id.*

It is important to note that the jury could have found intent to murder even if it had doubts about Nemer-Kaiser's recollection of exactly where defendant was standing during the shooting. Although there is some evidence, mainly from White's trial testimony, that defendant actually fired his gun from the side of the house, the jury was free to accept some parts of Nemer-Kaiser's testimony and reject others. See *People v Stiller*, 242 Mich App 38, 42; 617 NW2d 697 (2000). It would have been permissible, and not unreasonable, for the jurors to conclude that Nemer-Kaiser remembered defendant pointing a gun at his chest and pulling the trigger, even if he had been mistaken about whether defendant was standing on his porch or next to it. It was the intent behind the shot that mattered, not defendant's location at the time, and the possibility that the Schreiber dashboard video perhaps cast some doubt on whether defendant was actually standing on the porch did not contradict any of the evidence upon which the jury could infer intent. Therefore, the jury's finding of intent to kill and its subsequent conviction of defendant for AWIM was not against the great weight of the evidence.

Next, defendant argues that defense counsel's failure to properly explain the details of the Schreiber dashboard recording and highlight perceived inconsistencies with Nemer-Kaiser's testimony constituted ineffective assistance of counsel. Again, we disagree. Whether counsel was ineffective presents a mixed question of fact and constitutional law, which we review, respectively, for clear error and de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001), our Supreme Court, addressing the basic principles governing a claim of ineffective assistance of counsel, observed:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy the two-part test articulated by the United States Supreme Court in *Strickland v Washington,* 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). See *People v Pickens,* 446 Mich 298, 302-303; 521 NW2d 797 (1994). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the 'counsel' guaranteed by the Sixth Amendment." *Strickland, supra* at 687. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *Id.* at 690. "Second, the

> defendant must show that the deficient performance prejudiced the defense." *Id.*
> at 687. To demonstrate prejudice, the defendant must show the existence of a
> reasonable probability that, but for counsel's error, the result of the proceeding
> would have been different. *Id.* at 694. "A reasonable probability is a probability
> sufficient to undermine confidence in the outcome." *Id.* Because the defendant
> bears the burden of demonstrating both deficient performance and prejudice, the
> defendant necessarily bears the burden of establishing the factual predicate for his
> claim. See *People v Hoag,* 460 Mich 1, 6; 594 NW2d 57 (1999).

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

Because defendant raised this issue in the lower court, we consider the evidence presented in the lower court and at defendant's *Ginther* hearing. *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973). At the hearing, defense counsel took the stand and explained that during the four months before trial, she had reviewed the dashboard camera video from Schreiber's vehicle more than 15 times, and although she had not been able to acquire the proper equipment to show it to defendant in jail, she had taken detailed notes about the video and went over those with defendant. Defense counsel explained that she had not seen a muzzle flash in Schreiber's video, any light emanating from defendant's porch during the incident, or any person standing on defendant's porch. However, she felt that she was unable to argue that defendant had not fired a gun, as gunshots were clearly heard on the 9-1-1 recording and the recording from Nemer-Kaiser's dashboard camera. Further, counsel thought that it would harm her case to argue that defendant did not fire from the porch because White, her own witness, had stated that defendant shot from the front porch, both officers testified that they saw a muzzle flash from defendant's porch, and defendant himself had admitted, in a statement not admitted at trial, that he had been standing on the porch when he fired his gun in the air. Defense counsel felt that her only real option was to argue that defendant had not had the intent to kill Nemer-Kaiser, and she believed that the video did not offer support for that theory. Defense counsel claimed that she had discussed her strategy with defendant, and he had approved.

After the hearing, the trial court entered an order denying defendant's motion for a new trial, finding that defense counsel's assistance had not been ineffective. The trial court disagreed with defendant's characterization of the video as "powerful evidence," finding that the video did not refute Nemer-Kaiser's testimony. The trial court found that defense counsel's decision to focus on defendant's intent was sound trial strategy, expressing the opinion that she had chosen the "theory of defense that had the greatest likelihood of success."

On the evidence presented, including defense counsel's own testimony at the *Ginther* hearing, defendant has not overcome the strong presumption that defense counsel's decision regarding how to present the dashboard camera recording evidence at trial was a matter of sound trial strategy and cannot establish a claim for ineffective assistance of counsel. Defense counsel explained at the *Ginther* hearing that she believed her only viable defense was that defendant lacked the intent to kill Nemer-Kaiser. She chose to focus on the lack of intent through vigorous cross-examination of Nemer-Kaiser, highlighting the fact that his version of events might be tainted by his lack of experience and the fact that it was too dark outside to see. This strategy

was objectively reasonable. As previously discussed, the fact that defendant fired a weapon was beyond dispute. Further, defense counsel knew that arguing defendant's position as he fired the first shot, while having the potential to undermine Nemer-Kaiser's version of events, would not help her case and in some ways could prove detrimental. Her own witness testified that defendant was on the front porch when he fired his first shot. And as previously discussed, defendant's precise location at the time he shot at Nemer-Kaiser was irrelevant to the matter of intent.

In closing arguments, defense counsel asked the jurors to focus on the video, and to remember what the video did not show. She presented a defense—that defendant had not seen the officers before he fired his shots in the air—which defendant had discussed with defense counsel and approved. The fact that defendant or appellate counsel might have approached the recording evidence differently does not mean that defense counsel's approach was unreasonable. "A difference of opinion regarding trial tactics does not amount to ineffective assistance of counsel." *People v Stubli*, 163 Mich App 376, 381; 413 NW2d 804 (1987). A particular strategy does not constitute ineffective assistance of counsel simply because it does not work. *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004). Thus, the fact that defense counsel's strategy did not ultimately convince the jury did not render her assistance ineffective.

Further, even if defendant had shown that defense counsel's decisions regarding how to address the Schreiber recording were objectively unreasonable, defendant's ineffective assistance of counsel claim fails because he has not shown that the decisions resulted in prejudice. First, and most importantly, the jury reviewed the entire dashboard camera video at trial, and it had the opportunity to review it again during deliberations. Defendant asserts that these viewings were insufficient in light of defense counsel's failure to properly explain the recording. However, defendant's assertion is unconvincing. Defense counsel did not need to explain to the jury which house was defendant's or where the porch was located, given that the jury was presented with dozens of still photographs of defendant's house and the surrounding area and could reasonably have been expected to recognize defendant's house in the video, which was clearly illuminated after Schreiber shined his spotlight on it. Similarly, it was unnecessary for defense counsel to provide the exact timing of the gunshots because the jury had numerous other sources of that information. Nemer-Kaiser testified that the first gunshot happened seconds prior to when he turned on his flashlight, an action that was visible in the dashboard camera recording. Additionally, the 9-1-1 transcript, which was provided to the jury, clearly reflected a gunshot fired five minutes after defendant first placed his call to the dispatcher. Finally, defense counsel did not need to explain to the jury that a muzzle flash should have been seen in the video. Both Nemer-Kaiser and Schreiber testified that they saw a muzzle flash on defendant's porch, and the jurors did not need defense counsel to point out the lack of muzzle flash in the video—a fact that they could clearly see for themselves after multiple viewings.

There is no indication that further explanation from defense counsel was necessary or that it would have made any difference in the outcome of defendant's trial. Despite defendant's argument on appeal, the jury was well aware of the testimony presented in this case and the details presented in the recording. These details neither support nor refute defendant's intent to kill, which defendant admits was the only real issue in this case. Indeed, after multiple viewings, the trial court concluded that the video was not powerful or exculpatory, that it could easily be interpreted to support the prosecutor's theory, and that it did not undermine Nemer-Kaiser's

testimony in any significant way. After additional viewings, we are not convinced that the trial court made a mistake when it so found. The evidence was sufficient to support an inference of intent to kill without any reference to the recording, and without suffering prejudice, defendant cannot establish a deprivation of the effective assistance of counsel.

Affirmed.

/s/ Kurtis T. Wilder
/s/ William B. Murphy
/s/ Peter D. O'Connell