*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TIMOTHY DEMETREIS HOLDEN, JR.,

        Defendant-Appellant.

UNPUBLISHED
April 08, 2026
11:15 AM

No. 374631
Saginaw Circuit Court
LC No. 24-000464-FC

Before: KOROBKIN, P.J., and YOUNG and BAZZI, JJ.

PER CURIAM.

Defendant, Timothy Demetreis Holden, Jr., fatally shot decedent, Xavion Hopkins, while they were arguing in Holden's apartment. The jury was instructed on open murder, voluntary manslaughter, and self-defense, including that Holden did not have a duty to retreat in his own home. The jury convicted Holden of one count of second-degree murder, MCL 750.317, one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, and one count of lying to a peace officer during a violent crime investigation, MCL 750.479c(2)(d). For the reasons set forth in this opinion, we affirm Holden's convictions.

## I. FACTUAL AND PROCEDURAL HISTORY

Holden and decedent used to be roommates. Sometime before the murder, the two had a "fall[ing] out" over unpaid rent decedent owed Holden, and a hole decedent punched in the wall at Holden's apartment. In the early morning hours of February 11, 2024, Holden and his friends Dreana Lindsey, Joseph Sanders, and Dyjuan Jones, were sitting in the living room of his apartment. Holden received a phone call from decedent, who was intoxicated.[1] It is difficult to hear exactly what decedent said to Holden during this four-minute call,[2] but a detective on the case testified that decedent challenged Holden to a "shootout." At the beginning of the phone call,

---

[1] Decedents blood alcohol level was 0.212.

[2] A camera inside Holden's apartment captured the entire shooting and the events leading up to it, and the video was presented to the jury. We reviewed the video footage on appeal.

Holden told decedent "I'm cool with fighting, bro, but if you don't wanna . . ." and "I told you I didn't wanna fight, bro." However, as the conversation escalated, Holden told decedent "this is your last time bro," insulted decedent, then asked him "you've got a key to my house, right?" After the call ended, Holden changed his clothes, loaded his gun, and placed it on the TV stand located in the right corner of the living room next to the stairs to the entrance of the upstairs apartment. He sat on his couch and waited for decedent to arrive.

Decedent arrived at Holden's apartment 15 minutes later with his friends Elneisha Price and Deantrea Vaughn. He rang the doorbell, but let himself in. Decedent walked up the stairs into the living room, stated "I'm trying to figure out what the problem is," and placed his loaded handgun[3] on the banister of the staircase at the entrance to the apartment. A verbal confrontation then ensued about the hole decedent left in the wall, the unpaid rent, and various other damages to the apartment. The video shows Holden and decedent standing in the living room, fingers pointed in each other's faces, yelling at each other as their friends watched. This went on for several minutes.

As this went on, decedent moved closer to Holden, who backed up and held his hand up to decedent's chest to keep a distance between them. Decedent swatted Holden's hand away and baited Holden into engaging in a physical fight, saying "I'm in your crib" and "kill me, kill me, touch me again." Decedent assumed a fighting stance, with his legs apart and his fists in the air, but Holden appeared unwilling to get physical. Decedent pushed Holden again, but Holden kept a distance between them. Decedent's friend tried to intervene, but decedent pushed him away, again assuming a fighting stance, and stated "come on bro, come on."

Holden then turned away and walked into a different room but walked back into the living room and told decedent "I promise you, if you touch me, I'm doing something to you, bro." Decedent responded, "what's that mean?" Holden replied "I said what I said, bro." Decedent asked "you wanna shoot? You wanna shoot?" Decedent then walked back to the banister and grabbed his gun with his right hand, asking again and again "you wanna shoot?" Decedent pointed his gun downward.

Holden walked toward the TV stand, grabbed his own gun, and backed up. Decedent continued to ask "you wanna shoot?" Holden then walked to toward decedent, who placed his gun back down on the banister. At this point in the video, there is a clear view of decedent's hands completely open with no gun in either hand. Decedent then slapped Holden across the face with his right hand, which caused Holden to stumble to his right.[4] Less than one second later, Holden shot at decedent when decedent's gun was still on the banister. Decedent doubled over and turned

---

[3] Decedent's gun was later recovered by law enforcement in Price's vehicle, and trial testimony established that decedent's gun was loaded and ready to fire when law enforcement found it.

[4] Although the exact moment decedent put his gun back down on the banister is concealed in the video, Price and Sanders both testified decedent put his gun down before slapping Holden across the face.

away from Holden, clearly injured by the first shot. Holden fired a second shot to decedent's back as he was retreating down the staircase.

Decedent's friend told Holden "bro, you just shot my friend," and Holden yelled back "he just shot at me." Decedent's friend responded, "he didn't shoot at you," before leaving the apartment with decedent. Decedent later died at the hospital, and his cause of death was a gunshot wound to the left torso, the manner of death being homicide.

Holden went to his father's house to dispose of his gun, which police later recovered. One of Holden's friends stayed at the apartment and attempted to clean up the evidence. An officer later found a wet mop near a bloodstained area, and the lead detective testified that the video showed Holden's friend hiding what the detective later determined to be a bullet and a shell casing. Holden cleaned himself up and changed clothes when he returned to his apartment. When he spoke to police officers later in the morning on February 11, he denied knowing anything about the shooting, and in a later interview, told police officers that he and decedent "just talked." Law enforcement later found the clothes Holden wore during the shooting inside his friend's car.

Holden was charged with open murder, MCL 750.316, two counts of felony-firearm MCL 750.227b, possession of a firearm by a prohibited person, MCL 750.224f(6), and lying to a peace officer during a violent crime investigation, MCL 750.479c(2)(d). At his jury trial, several officers and detectives from the Saginaw and Buena Vista police departments, the chief medical examiner for St. Clair County, as well as Price, Vaughn, and Sanders, all testified for the prosecution. After the prosecution rested, the defense moved for a directed verdict on the open murder and felony firearm charges. The defense argued Holden did not intend to murder decedent because Holden did not grab his gun until decedent grabbed his gun, and Holden was only acting in self-defense.[5] The trial court denied the motion for a directed verdict, holding there was sufficient evidence as to each element of the charge of open murder, and that the case was "going to boil down to how the jury interprets the video . . . as well as the credibility of the witnesses," to determine whether decedent had a gun in his hand when Holden shot him and whether Holden was acting in self-defense. After the motion was denied, the defense also rested, and Holden did not testify.

The trial court instructed the jury on the elements of first-degree murder, second-degree murder, voluntary manslaughter, and on self-defense. The jury convicted Holden of one count each of second-degree murder, felony-firearm, and making a false or misleading statement to a peace officer during a violent crime investigation. After the jury trial conviction, Holden filed a motion for a judgement notwithstanding the verdict, or a new trial. He maintained that he acted in self-defense because (1) decedent threatened Holden during past altercations, (2) decedent brought a firearm with him to Holden's apartment, (3) decedent acted in a hostile manner during the argument, repeatedly "squared to fight," and repeatedly made the statement "you wanna shoot?" several times during the incident, and (4) that decedent physically assaulted Holden by striking him in the face immediately before Holden shot him.

---

[5] The sentencing court later observed that trial defense counsel did not emphasize or argue that this was voluntary manslaughter.

At Holden's sentencing hearing, the trial court denied the motion, stating: "the [c]ourt has reviewed the video several times over the past three weeks in an attempt to determine whether the jury's verdict went against the great weight of the evidence. It is clear to this [c]ourt that the jury's verdict was based on, among other things, the video recording of the incident itself as the jury requested of this court to view the video recording." The trial court provided a detailed summary of the video, and then opined:

> In a case of self-defense as put forth by the defendant in this case, a person is justified in killing another person only if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a . . . threat of serious bodily harm. Defendant is only entitled to use the amount of force necessary to defend himself.

> \*     \*     \*

> What is particularly fatal to the defendant's motion for a new trial is the video evidence which shows that [decedent] was unarmed immediately before he was shot. Given this evidence of shooting an unarmed person in response to a slap, which presented no immediate threat of death or serious bodily injury, the jury was reasonable in finding that the prosecutor carried her burden of proving that defendant did not act in lawful self-defense.

> \*     \*     \*

> As such, the jury's finding that it has been shown that both defendant's initial shot into [decedent] and second shot into [decedent's] back as he was retreating away were not honestly and reasonably necessary is not contrary to the great weight of the evidence.

Holden was then sentenced for his convictions. His guidelines recommendation for the second-degree murder conviction was 18.75 years to 39 years or life imprisonment. The trial court sentenced him to 10 years to 25 years imprisonment, recognizing "the shot was fired not even a second after Mr. Holden was slapped across the face and the [decedent] was standing next to the firearm on the banister."

Holden now appeals as of right.

## II. SUFFICIENCY OF THE EVIDENCE

On appeal, Holden argues that there was insufficient evidence for a reasonable fact-finder to determine that (1) the shooting was not justified by self-defense or (2) that Holden acted with malice when he shot decedent. We disagree with Holden's arguments.

We review de novo the trial court's decision on a motion for a directed verdict. *People v Hammons*, 210 Mich App 554, 556; 534 NW2d 183 (1995). We also review a challenge to the sufficiency of the evidence de novo. *People v Xun Wang*, 505 Mich 239, 251; 952 NW2d 334 (2020). We must "view the evidence in a light most favorable to the prosecution and determine

-4-

whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992).

## A. SELF-DEFENSE

"A killing may be considered justified if the defendant act[ed] in self-defense." *People v Bailey*, 330 Mich App 41, 46; 944 NW2d 370 (2019). "With the enactment of the Self–Defense Act (SDA), MCL 780.971 *et seq.*, the Legislature codified the circumstances in which a person may use deadly force in self-defense or in defense of another person without having the duty to retreat." *People v Dupree*, 486 Mich 693, 708; 788 NW2d 399 (2010). The SDA states, in relevant part:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:
>
> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual. [MCL 780.972(1)(a).]

Once a defendant produces evidence that would allow a fact-finder to conclude that the defendant established a prima facie case of self-defense, the prosecution then must "exclude the possibility of self-defense beyond a reasonable doubt." *Bailey*, 300 Mich App at 46-47.

Here, viewing the evidence in the light most favorable to the prosecution, we conclude that there was sufficient evidence for a rational fact-finder to determine that deadly force was not necessary to avoid the danger that decedent posed. Neither party disputes that decedent arrived at Holden's home armed and later tried to physically fight and slapped Holden. And two witnesses testified that decedent was not holding his firearm when Holden shot him. Thus, viewing this evidence in the light most favorable to the prosecution, the loaded firearm was not on decedent's person and a slap is not sufficient provocation to warrant deadly force. *People v Roper*, 286 Mich App 77, 88; 777 NW2d 483 (2009) ("[G]enerally, a defendant is not entitled to use any more force than is necessary to defend himself or herself").

Other actions taken by Holden also contradict his self-defense claim. The trial court acknowledged that the video showed Holden continue to shoot decedent even after decedent tried to retreat; the shot while decedent's back was turned supports this. See *Bailey*, 330 Mich App at 48. And even if one thinks it unrealistic that one would come forward to police after fatally shooting someone in their home, our caselaw is clear that lying to two different officers when questioned about the shooting can discredit Holden's self-defense argument. See *People v Kowalski*, 489 Mich 509 n 37; 803 NW2d 200 (2011) ("A jury may infer consciousness of guilt from evidence of lying or deception").

Further, after shooting decedent, Holden tried to dispose of his firearm and attempted to hide the clothes he wore inside a friend's car. Viewing the facts in the light most favorable to the prosecution, see *Wolfe*, 440 Mich at 515, it appears that Holden, with the help of his friends, tried to hide evidence of the shooting. This evidence could be viewed as "an effort to destroy evidence

of the crime of murder, thereby showing consciousness of guilt." *People v Sharpe*, 319 Mich App 153, 172-173; 899 NW2d 787 (2017).

Considering the insufficient danger that decedent posed and Holden's actions in attempting to cover up the shooting, the prosecution presented sufficient evidence for a rational fact-finder to conclude that Holden did not act in self-defense when he shot and killed decedent.

## B. MALICE

Holden also argues that the prosecution did not present sufficient evidence for a rational trier of fact to conclude that he acted with malice when he shot decedent. We disagree.

There are three elements of second-degree murder: (1) a death, (2) caused by the defendant, (3) with malice. *People v Spears*, 346 Mich App 494, 514; 13 NW3d 20 (2023). Malice is "the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and willful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Bailey*, 330 Mich App at 48 (quotation marks and citation omitted). By arguing that he acted in self-defense, Holden necessarily conceded that there was sufficient evidence that he acted with malice. *Spears*, 346 Mich App at 518 ("[T]he assertion by defendant that he acted in self-defense is a concession that the elements of second-degree murder are satisfied").

## III. GREAT WEIGHT OF THE EVIDENCE

Alternatively, Holden argues that his felony-firearm and second-degree murder convictions were against the great weight of the evidence. We disagree.

We "review for an abuse of discretion a trial court's grant or denial of a motion for a new trial on the ground that the verdict was against the great weight of the evidence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). A trial court's "verdict is against the great weight of the evidence and a new trial should be granted when the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v Evans*, 335 Mich App 76, 78; 966 NW2d 402 (2020) (quotation marks and citations omitted). A verdict is generally "against the great weight of the evidence only when it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *Id*. (cleaned up).

As an initial matter, Holden did not cite any authority or make any arguments in support of his claim that his felony-firearm conviction was against the great weight of the evidence. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Iannucci*, 314 Mich App 542, 545; 887 NW2d 817 (2016) (cleaned up). "The failure to brief the merits of an allegation of error constitutes an abandonment of the issue." *Id*. (cleaned up). Therefore, we decline to address Holden's felony-firearm conviction. See *id*.

Holden's argument that his second-degree murder conviction was against the great weight of the evidence primarily restates his argument regarding the sufficiency of the evidence. As previously discussed, there was ample evidence establishing that Holden did not act in self-defense

when he shot and killed decedent. The jury chose to credit this evidence over the evidence Holden presented to support his self-defense claim. Accordingly, we must "leave the test of credibility where our system reposed it—in the trier of the facts." *People v Lemmon*, 456 Mich 625, 645-646; 576 NW2d 129 (1998) (quotation marks and citation omitted).

Holden alternatively argues that the great weight of the evidence supported a finding that that the murder was mitigated to voluntary manslaughter under MCL 750.321. But the jury was instructed on voluntary manslaughter and still found Holden guilty of second-degree murder. The jury was free to reject any argument that Holden acted in the heat of passion, and we "will not second-guess that determination." *Roper*, 286 Mich App at 89.

Holden's second-degree murder conviction was not against the great weight of the evidence. See *Evans*, 335 Mich App at 87. Therefore, the trial court did not abuse its discretion when it denied Holden's motion for a new trial. See *Lacalamita*, 286 Mich App at 469.

Affirmed.

/s/ Daniel S. Korobkin
/s/ Adrienne N. Young
/s/ Mariam S. Bazzi