# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROBERT MAKSYMILIAN SOLECKI,

        Defendant-Appellant.

UNPUBLISHED
May 9, 2017

No.  331154
Dickinson Circuit Court
LC No.  15-005121-FH

Before:  GADOLA, P.J., and JANSEN and SAAD, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of resisting and obstructing a police officer, MCL 750.81d(1), fourth-degree fleeing and eluding a police officer (fleeing and eluding), MCL 257.602a(2), and operating a vehicle with a suspended license, second offense, MCL 257.904(1) and (3)(b).  He was sentenced to eight months in jail for each conviction.  We affirm.

## I.  FACTS

Defendant was spotted by police driving an off-road vehicle (ORV) on two roadways and failing to stop at a stop sign.  Upon pulling defendant over, Michigan State Police Trooper Ryan Rossler discovered that defendant's license was suspended.  Defendant was told he was going to be arrested and taken to jail.  Defendant had two dogs with him and was concerned about what would happen to them and the ORV.  Trooper Rossler offered several options on how to transport the dogs and the ORV to defendant's home, all of which defendant refused.  Defendant told Trooper Rossler he was going home and drove away from the scene.  Trooper Rossler followed defendant for the approximate ½ mile to defendant's home.  Defendant put his dogs inside his residence, sat in a lawn chair in his yard, and continued to refuse to cooperate with the police.  Eventually, Trooper Rossler and another officer physically removed defendant from the lawn chair.  He was handcuffed and transported to jail.

## II.  SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence presented to convict him of fourth-degree fleeing and eluding.  We disagree.

-1-

We review this argument de novo. *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). "A court must 'view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.' " *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007) (citation omitted). "Circumstantial evidence and the reasonable inferences that arise from that evidence can constitute satisfactory proof of the elements of the crime." *People v Henderson*, 306 Mich App 1, 9; 854 NW2d 234 (2014).

MCL 257.602a provides, in relevant part, as follows:

(1) A driver of a motor vehicle who is given by hand, voice, emergency light, or siren a visual or audible signal by a police or conservation officer, acting in the lawful performance of his or her duty, directing the driver to bring his or her motor vehicle to a stop shall not willfully fail to obey that direction by increasing the speed of the motor vehicle, extinguishing the lights of the motor vehicle, or otherwise attempting to flee or elude the officer. This subsection does not apply unless the police or conservation officer giving the signal is in uniform and the officer's vehicle is identified as an official police or department of natural resources vehicle.

(2) Except as provided in subsection (3), (4), or (5), an individual who violates subsection (1) is guilty of fourth-degree fleeing and eluding, a felony punishable by imprisonment for not more than 2 years or a fine of not more than $500.00, or both.

Fleeing and eluding is a general intent crime and only requires the intent to do the physical act of fleeing and eluding an officer. *People v Abramski*, 257 Mich App 71, 73; 665 NW2d 501 (2003).

Defendant's sufficiency challenge is focused on the intent element of the crime. He argues that because he did not intend to *permanently* flee or elude the police, as evidenced by his testimony that he told Trooper Rossler he was heading home and that Trooper Rossler should meet him there, the evidence was constitutionally insufficient to convict him of the crime. Defendant misunderstands the behavior the statute is designed to proscribe. The statute is focused on punishing the willful failure to obey a directive by an identifiable police or conservation officer. In other words, the focus is on the act of disobedience, not the perpetrator's internal mindset on how long he or she is attempting to avoid arrest. The statute is designed to protect the public from harm stemming from the failure to obey in circumstances where the perpetrator is driving a motor vehicle, which can, if operated in an unsafe manner, cause injury to persons and property. This is further evidenced by the increased penalties provided where "the violation results in a collision or accident," MCL 257.602a(3)(a), the "violation occurred in an area where the speed limit is 35 miles an hour or less," MCL 257.602a(3)(b), and "the violation results in serious injury," MCL 257.602a(4)(a), or "death of another individual," MCL 257.602a(5). In other words, the statute is a public safety measure intended to punish the failure

to comply with lawful orders from police. It is not intended to simply punish a singular intent to avoid capture on the part of a defendant.[1]

Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to establish that defendant intended to flee and elude Trooper Rossler. The statute expressly notes that fleeing and eluding can be shown by a defendant "increasing the speed of the motor vehicle" after being signaled to stop. MCL 257.602a(1). Although there is no evidence that defendant attempted to elude capture by increasing the speed of the ORV when he was seen by Trooper Rossler, defendant did increase the speed of the ORV from a complete stop and drove away after repeatedly being warned that he could be charged with fleeing and eluding if he left the scene of the traffic stop. He drove over ½ mile to his home. "[T]he use of the ejusdem generis clause 'or otherwise attempting' means that acts or conduct of the same kind, class, or character as speeding or extinguishing lights are also included within the offense." *People v Grayer*, 235 Mich App 737, 740 n 2; 599 NW2d 527 (1999).[2] Driving away from an officer after being stopped is of the same kind, class, or character as increasing a vehicle's speed to elude a pursuing police officer. See *id.* at 745 ("[T]he statute itself does not limit fleeing and eluding to high-speed or long-distance chases."). While defendant informed Trooper Rossler where he intended to go, he still fled[3] the scene of the initial traffic stop and eluded,[4] or evaded the officer, for over ½ mile. In sum, viewing the evidence in the light most favorable to the prosecution, it is clear that there was sufficient evidence to establish that defendant intended to flee and elude a police officer.

### III. GREAT WEIGHT OF THE EVIDENCE

Defendant also argues that his fourth-degree fleeing and eluding conviction is against the great weight of the evidence. "The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). This issue was not preserved below through the filing of a

---

[1] The sentencing guidelines identify fourth-degree and third-degree fleeing and eluding as crimes against public safety, and second- and first-degree fleeing and eluding as crimes against a person. MCL 777.12e.

[2] We note that although *Grayer* involved the crime of fleeing and eluding as outlined in MCL 750.479a, the two fleeing and eluding statutes contain nearly identical relevant language. See MCL 750.479a; MCL 257.602a.

[3] *Grayer* notes that "Random House Webster's College Dictionary (1997) defines 'flee' as 'to run away, as from danger or pursuers; take flight; to move of pass swiftly; fly; speed' " *Grayer*, 235 Mich App at 741 (citation omitted).

[4] *Grayer* notes that "Random House Webster's College Dictionary (1997) defines . . . 'elude' as 'to avoid capture or escape by detection by; evade.' " *Grayer*, 235 Mich App at 741 (citation omitted).

-3-

motion for new trial. See *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). Therefore, the issue is reviewed for plain error affecting defendant's substantial rights. *Id*. "Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *Lacalamita*, 286 Mich App at 469. Defendant again argues, in effect, that because he did not intend to permanently evade the police, he cannot be guilty of violating MCL 257.602(a). As stated above, this argument is without merit. Therefore, defendant cannot establish plain error affecting his substantial rights.

## IV. MOTION FOR MISTRIAL

Next, defendant argues that the trial court abused its discretion by denying his motion for a mistrial predicated on comments made by the prosecutor in her rebuttal argument. We disagree.

We review a trial court's decision to deny a motion for a mistrial for an abuse of discretion. *People v Lane*, 308 Mich App 38, 60; 862 NW2d 446 (2014). "The trial court abuses its discretion when its decision falls outside the range of principled outcomes." *Id*. "The trial court should only grant a mistrial for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial and when the prejudicial effect of the error cannot be removed in any other way." *Id*. (citations and quotation marks omitted). In addition, "[t]he trial court may consider, among other things, whether the prosecutor intentionally presented the information to the jury or emphasized the information." *Id*.

Underlying defendant's argument is a claim of prosecutorial misconduct. "Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). In considering a challenge to remarks made by a prosecutor, we examine the context in which they were made, including arguments made by the defense and "the relationship the comments bear to the evidence admitted at trial." *Id*. at 64.

Defendant challenges the following statements made by the prosecutor in her rebuttal argument regarding the lack of medical evidence of injuries defendant asserted he sustained when arrested:

> I was waiting to hear some comments about the Defendant's injuries as a result of this incident, and I didn't hear that, but I would be remiss if I didn't address that . . . .

> Now, you were able to hear with your own ears the Defendant laughing and joking with Trooper Rossler on the way to the jail talking about fishing. That isn't someone who's suffering with multiple broken ribs and a dislocated shoulder, ladies and gentlemen. *Believe you me, if he were injured in this incident, you would have heard medical testimony*. [Emphasis added.]

-4-

We agree with defendant that the prosecutor's statements regarding the absence of medical evidence were improper. Her argument implies that defendant chose not to provide such evidence. However, the trial court excluded as irrelevant a medical discharge summary and testimony of a nurse. Therefore, we conclude that the prosecutor's statements were improper.

Regardless, we conclude that the trial court did not abuse its discretion by denying the motion for a mistrial. Defendant immediately objected to the prosecutor's comments. Finding the comments improper, the court gave the following curative instructions:

> Ladies and gentlemen of the jury, you will disregard any reference in these closing remarks to there being any medical documentation. There has not been any proof of any medical documentation. There was an offer of some nursing discharge statement. The Court ruled that that was not admissible. There was an attempt on the Defendant's part to admit that. The Court ruled that it was not relevant to these proceedings, and that's why you didn't hear it. It shouldn't be held against the Defendant for not attempting to offer it.
>
> * * *
>
> [W]hen I rule that something is inadmissible, it's inadmissible, and that's why you didn't hear it. It wasn't because anyone was trying to hide it, but it was not admissible evidence in this case. So the fact that you didn't hear it does not weigh in this case at all.

" 'Jurors are presumed to follow their instructions, and instructions are presumed to cure most errors.' " *People v Ericksen*, 288 Mich App 192, 199-200; 793 NW2d 120 (2010) (citation omitted). These instructions were sufficient to cure the error made by the prosecutor. The court clearly explained to the jury the lack of medical documentation in the record and that no one was trying to hide it. Therefore, the trial court properly denied defendant's motion for a mistrial.

## V. CIVIC DUTY AND BOLSTERING

Defendant also argues that the prosecutor committed misconduct by improperly appealing to the jurors' sense of civic duty and placing the prestige of her office in issue. We disagree.

Defendant failed to raise these specific objections. "In order to preserve a claim of prosecutorial misconduct for appellate review, a defendant must have timely and specifically objected below, unless objection could not have cured the error." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Accordingly, the issue is unpreserved. "Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *Id*.

Generally, prosecutors are given great latitude in their arguments at trial. *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009). "To determine if a prosecutor's comments were improper, we evaluate the prosecutor's remarks in context, in light of defense counsel's arguments and the relationship of these comments to the admitted evidence." *Id*. While prosecutors cannot mischaracterize evidence, they are free to argue reasonable inferences that

arise from the evidence. *People v Callon*, 256 Mich App 312, 330; 662 NW2d 501 (2003). A civic duty argument "inject[s] issues broader than guilt or innocence or encourage[es] jurors to suspend their powers of judgment." *People v Thomas*, 260 Mich App 450, 455-456; 678 NW2d 631 (2004). Defendant takes issue with the following statements in the prosecutor's rebuttal argument:

> And, quite frankly, I find it appalling that the Defendant would come into this courtroom and claim that these officers injured him as kind and as respectful as they were to him up until the very end of this ordeal. They don't deserve that kind of treatment. These are professionals who get up every morning, put on that blue uniform, putting their lives in danger to protect and serve the lives of you and me and him. And to come into a court of law and make those kind of wild claims that are unfounded and unsupported by any evidence is unspeakable.

We conclude that to the extent that the prosecutor's statements constituted an improper civic duty argument, any minimal prejudice from the statements was cured by the court's jury instructions. The court instructed the jurors it was their responsibility to "return a true and just verdict based only on the evidence" and the court's instructions, and cautioned that they "must not let sympathy or prejudice influence [their] decision." Therefore, we conclude that even assuming that the prosecutor's discussion constituted an improper civic duty argument, defendant cannot establish prejudice. See *Thomas*, 260 Mich App at 456.

Defendant also argues that the prosecutor put the prestige of her office in issue and inappropriately bolstered her case, which encouraged the jurors to suspend their own powers of critical analysis. Defendant challenges the following argument:

> There is no reasonable doubt as to what occurred on May 3, 2015. And, in fact, I would submit to you that the Prosecution has met its burden beyond any shadow of a doubt. It's not very often that I say that. We ask you to find the Defendant guilty as charged because he is guilty as charged.

It is well understood that prosecutors must not express their personal opinions of a defendant's guilt. See *People v Bahoda*, 448 Mich 261, 286; 531 NW2d 659 (1995). In this case, however, the prosecutor did not use the prestige of her office to express her personal opinion of defendant's guilt. Instead, she was merely arguing that the prosecution had met its burden of proof. Her assertion that she does not often express such confidence to a jury is only an expression of her conviction that defendant's guilt had been established by the evidence adduced. Utilizing the phrases "I would submit to you" and "[w]e ask you to find" did not ask the jurors to suspend their own powers of critical analysis. Rather, the comments explicitly invoked the jury's role in deciding defendant's guilt or innocence. Therefore, defendant's argument is without merit.

Affirmed.

/s/ Michael F. Gadola
/s/ Kathleen Jansen
/s/ Henry William Saad

-6-