*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRIAN KEITH HENRY,

        Defendant-Appellant.

UNPUBLISHED
April 25, 2024

No. 361666
Ingham Circuit Court
LC No. 20-000692-FC

Before: M. J. KELLY, P.J., and JANSEN and MURRAY, JJ.

PER CURIAM.

Defendant appeals as of right his convictions by a jury of assault with intent to murder (AWIM), MCL 750.83; felonious assault, MCL 750.82; two counts of domestic violence (third offense), MCL 750.81(5); felon in possession of a firearm (felon-in-possession), MCL 750.224f; carrying a concealed weapon (CCW), MCL 750.227; and five counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.[1] The trial court, applying a fourth-offense habitual-offender enhancement under MCL 769.12, sentenced defendant to 300 to 800 months' imprisonment for AWIM, 50 to 180 months' imprisonment for felonious assault, two terms of 50 to 200 months' imprisonment for third-offense domestic violence, 50 to 200 months' imprisonment for felon-in-possession, 50 to 200 months' imprisonment for CCW, and five terms of 24 months' imprisonment for felony-firearm. We affirm.

The convictions arose from the hitting, waving a gun toward, and shooting of April Smith on the afternoon of May 18, 2020, as well as a (comparatively less severe) assault on her on April 18, 2020. Security camera surveillance video footage admitted at trial shows defendant approaching the balcony of AS's apartment on May 18 with an exposed handgun, talking animatedly, and slapping his hand toward AS's leg. Another man, James Gidron, was with defendant at the apartment complex. The footage shows Gidron obtaining the gun from defendant and shooting AS. The prosecutor presented evidence that defendant and AS were married but estranged, that defendant had a long history of assaulting her, and that he was upset about her

---

[1] The jury acquitted defendant of witness intimidation.

having another man in her apartment. The prosecutor's theory was that defendant intentionally brought Gidron as a "shooter" and was the aider and abettor to Gidron's shooting of AS.

## I. OTHER ACTS

Defendant first contends that the trial court erroneously allowed the prosecutor to present evidence of his other acts of domestic violence against AS. A decision regarding whether to admit evidence is reviewed for an abuse of discretion. *People v Watkins*, 491 Mich 450, 467; 818 NW2d 296 (2012). "A trial court abuses its discretion when it chooses an outcome falling outside the range of principled outcomes." *Id.*

The trial court admitted the other acts under MCL 768.27b, which states in part:

(1) Except as provided in subsection (4), in a criminal action in which the defendant is accused of an offense involving domestic violence or sexual assault, evidence of the defendant's commission of other acts of domestic violence or sexual assault is admissible for any purpose for which it is relevant, if it is not otherwise excluded under Michigan rule of evidence 403.

\* \* \*

(4) Evidence of an act occurring more than 10 years before the charged offense is inadmissible under this section unless the court determines that 1 or more of the following apply:

(a) The act was a sexual assault that was reported to law enforcement within 5 years of the date of the sexual assault.

(b) The act was a sexual assault and a sexual assault evidence kit was collected.

(c) The act was a sexual assault and the testing of evidence connected to the assault resulted in a DNA identification profile that is associated with the defendant.

(d) Admitting the evidence is in the interest of justice.

\* \* \*

(6) As used in this section:

(a) "Domestic violence" or "offense involving domestic violence" means an occurrence of 1 or more of the following acts by a person that is not an act of self-defense:

(*i*) Causing or attempting to cause physical or mental harm to a family or household member.

(*ii*) Placing a family or household member in fear of physical or mental harm.

* * *

(*iv*) Engaging in activity toward a family or household member that would cause a reasonable person to feel terrorized, frightened, intimidated, threatened, harassed, or molested.

(b) "Family or household member" means any of the following:

(*i*) A spouse or former spouse.

* * *

(*iv*) An individual with whom the person has or has had a dating relationship. As used in this subparagraph, "dating relationship" means frequent, intimate associations primarily characterized by the expectation of affectional involvement. . . .

Defendant contends that the court should have excluded the evidence under MRE 403, which states that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

The propensity inference of the evidence is to be weighed in favor of its probative value, not its prejudicial effect. See *Watkins*, 491 Mich at 487 (discussing MCL 768.27a). As stated in *People v Cameron*, 291 Mich App 599, 609; 806 NW2d 371 (2011), "The language of MCL 768.27b clearly indicates that trial courts have discretion to admit relevant evidence of other domestic assaults to prove any issue, even the character of the accused, if the evidence meets the standard of MRE 403." (Quotation marks and citation omitted.) In *Cameron*, *id*. at 612, the Court said that "the evidence of Cameron's actions on six separate occasions with Yacheson and on three separate occasions with Ponder demonstrated Cameron's propensity to commit acts of violence against women who were or had been romantically involved with him." The same is true here.

The *Watkins* Court set forth a non-exhaustive list of factors that might lead a court to exclude other-acts evidence under MRE 403, despite its relevance:

(1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Watkins*, 491 Mich at 487-488.]

These factors weigh in favor of admissibility. The other acts and the charged acts were similar in that the assaults occurred against AS, in or just outside of her home, and involved defendant's attempt to control and intimidate her. The acts were also close in temporal proximity

-3-

to the charged offenses, were frequent, and there was no "intervening act." Defendant contends that Gidron's involvement was an intervening act, but the evidence showed that Gidron was acting at defendant's direction and that the shooting was an escalation of defendant's violence. The other acts were also corroborated in part by testimony of others, and helped to explain the silent video footage. The other-acts evidence assisted the jury in understanding what defendant was doing on the video when he first approached AS's balcony and waved the gun and then later "handed off" the gun to Gidron.

In sum, the other acts gave a picture of defendant's history and shed light on the likelihood of defendant's having committed the charged crimes, *Cameron*, 291 Mich App at 610, and no abuse of discretion is apparent with regard to the trial court's ruling. We note, too, that the jury received a cautionary instruction about the other acts.

## II. MISTRIAL

Defendant contends that the trial court should have granted his motion for a mistrial on the basis of AS's comments about defendant's having been arrested and incarcerated. This Court reviews for an abuse of discretion a trial court's ruling regarding a motion for a mistrial. *People v Caddell*, 332 Mich App 27, 37; 955 NW2d 488 (2020).

"A motion for a mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs the defendant's ability to get a fair trial." *People v Dickinson*, 321 Mich App 1, 18; 909 NW2d 24 (2017) (quotation marks and citation omitted). "A mistrial should be granted only where the error complained of is so egregious that the prejudicial effect can be removed in no other way." *People v Gonzales*, 193 Mich App 263, 266; 483 NW2d 458 (1992).

The court sustained most of the objections to AS's references to defendant's arrests, and his time in jail or prison. AS's references were volunteered, i.e., nonresponsive. In *People v Lumsden*, 168 Mich App 286, 299; 423 NW2d 645 (1988), we noted that "an unresponsive, volunteered answer to a proper question is not cause for granting a mistrial." Two other considerations are also significant. First, the jurors were aware that defendant had committed many assaults against AS in light of the proper admission of the other-acts evidence under MCL 768.27b. As noted by the trial court, that defendant had spent some time incarcerated would not have been unusual or surprising, in light of that history. Second, at one point defendant himself used being in jail as a reason for why he could not have committed an assault against AS in March 2019. Under all these circumstances, the court did not abuse its discretion by denying the motion for a mistrial.

Defendant also takes issue with AS's statement that he had the nickname of "Santana," which meant "Satan," and with her reference to his being in a gang. We review these unpreserved issues for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Under the plain-error doctrine, reversal is warranted if a "clear or obvious" error occurred that "affected the outcome of the lower court proceedings." *Id*. And even if this standard is satisfied,

an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*Id*. at 763-764 (citation, quotation marks, and brackets omitted).]

As for the reference to defendant's alleged nickname, this was not an "other act" under MRE 404(b); as such, no plain error is apparent in connection with defendant's appellate argument. That defendant was allegedly in a gang could be characterized as a "wrong" under MRE 404(b), but the reference was unsolicited and fleeting; the transcript shows that the prosecutor was attempting to move on as quickly as possible. In addition, defense counsel, on cross-examination, again raised the "gang" issue, in an attempt at impeachment. Under these circumstances, there was no outcome-determinative error, and reversal under the plain-error doctrine is not warranted. *Carines*, 460 Mich at 763-764.

## III. GREAT WEIGHT OF EVIDENCE

Defendant next contends that the trial court should have granted his motion for a new trial because the AWIM verdict was against the great weight of the evidence. "[This Court] review[s] for an abuse of discretion a trial court's grant or denial of a motion for a new trial on the ground that the verdict was against the great weight of the evidence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009).

"The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Id*. "Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *Id*. Conflicting testimony, even if there is a degree of impeachment, is an insufficient basis upon which to grant a new trial. *Id*. at 469-470. Credibility issues are for the jury. *Id*. at 470. As stated in *People v Anderson*, 322 Mich App 622, 632; 912 NW2d 607 (2018):

[U]nless it can be said that directly contradictory testimony was so far impeached that it was deprived of all probative value or that the jury could not believe it, or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination. [Quotation marks and citations omitted.]

The elements of assault with intent to murder are (1) an assault; (2) with an intent to kill; (3) which, if successful, would result in murder. *People v Brown*, 267 Mich App 141, 147-148; 703 NW2d 230 (2005). To convict a defendant under an aiding-and-abetting theory, a prosecutor

must prove beyond a reasonable doubt that the defendant aided or abetted the commission of an offense and that the defendant intended to aid the charged offense, knew the principal intended to commit the charged offense, or, alternatively, that the charged offense was a natural and probable consequence of the commission of the intended offense. [*People v Robinson*, 475 Mich 1, 15; 715 NW2d 44 (2006).]

The evidence did not preponderate so heavily against the AWIM verdict such that it would be a miscarriage of justice to allow the verdict to stand. The jurors were informed of defendant's threats to kill AS and her male friend. They were informed that a bullet fragment entered AS's body above her heart. They knew of defendant's history of serious assaults against AS, which were escalating in nature. They were shown the surveillance footage, which captured the entire May 18 incident. Defendant contends that the footage shows that Gidron took the gun from defendant and that he did not hand it to him. However, the video shows Gidron running his hand down defendant's arm, and the exact moment of the gun transfer takes place while the men's bodies are hiding the actual view of the gun. In addition, and significantly, AS testified that, when Gidron was obtaining the gun, defendant said, " 'Shoot that b*tch.' " Defendant contends that this testimony is suspect because the prosecutor needed to refresh AS's recollection in order for her to recall the statement. The transcript, however, reveals that the prosecutor was going to refresh AS's recollection with regard to this statement, but that AS ended up recalling the statement *on her own*. Witness credibility was up to the jury, *Anderson*, 322 Mich App at 632, and the jurors were presented with ample evidence from which to conclude that defendant aided and abetted Gidron in assaulting AS with the intent to murder her.

## IV. HABITUAL NOTICE

Defendant lastly contends that resentencing is required because the record does not contain a proof of service of the notice for his fourth-offense habitual-offender enhancement. A de novo standard of review applies to this issue. *People v Head*, 323 Mich App 526, 542; 917 NW2d 752 (2018).

MCL 769.13 states, in part:

> (1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under section 10, 11, or 12 of this chapter, by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

> (2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. The notice shall be filed with the court and served upon the defendant or his or her attorney within the time provided in subsection (1). The notice may be personally served upon the defendant or his or her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings. The prosecuting attorney shall file a written proof of service with the clerk of the court.

Defendant seeks resentencing because the prosecutor failed to file a proof of service. But the October 13, 2020 felony information contains the habitual-offender notice (and the

accompanying notice of a 25-year minimum), as does the May 2020 felony complaint.[2]  In addition, the record contains a waiver of arraignment in which both defendant and his attorney admitted to having received a copy of the information.  At sentencing, the defense expressed no surprise at the application of the fourth-offense habitual-offender enhancement.  In addition, the prosecutor filed an affidavit stating that defendant (through counsel) had been electronically served with the habitual-offender notice.  The prosecutor also filed an e-mail in which defendant's attorney admitted that the felony information had "show[n] up" in his "internal file system" on October 14, 2020.

In *Head*, 323 Mich App at 544-545, the Court stated:

> In this case, defendant is correct that the prosecutor failed to file a proof of service of the notice of intent to enhance defendant's sentence.  However, the error is harmless because defendant had actual notice of the prosecutor's intent to seek an enhanced sentence and defendant was not prejudiced in his ability to respond to the habitual-offender notification.
>
> In particular, the charging documents in the lower court file all apprised defendant of his fourth-offense habitual-offender status.  Although defendant vaguely asserts that the habitual-offender notice was not properly "served" on defendant or defense counsel, defendant does not specify what he means by this.  Defendant does not claim that he and defense counsel never received a copy of the charging documents.  Moreover, defendant received actual notice on the record at the preliminary examination that he was being charged as a fourth-offense habitual offender.  At the arraignment on the information, defendant waived a formal reading of the information, as permitted by MCR 6.113(B).  There was no indication at the arraignment hearing that defendant or his attorney had not received a copy of the felony information.  Indeed, MCR 6.113(B) required the prosecutor to give defendant a copy of the felony information, which in this case included the habitual-offender notice.  Defendant does not assert that the prosecutor failed to comply with that provision.  Because defendant had access to the charging documents, he had notice of the charges against him, including the habitual offender enhancement, and he also was informed of the habitual-offender enhancement at the preliminary examination.
>
> The conclusion that defendant was not prejudiced and that he received actual notice of the habitual-offender enhancement is further supported by the fact that defendant and defense counsel exhibited no surprise at sentencing when defendant was sentenced as a fourth-offense habitual offender.  Also, the fact that the prosecutor was seeking to enhance defendant's sentence as a fourth-offense habitual offender was acknowledged on the record by defendant and defense counsel at a pretrial hearing during the discussion of the prosecutor's final plea

---

[2] MCL 769.12(1)(a) states, in part, that "[i]f the subsequent felony is a serious crime or a conspiracy to commit a serious crime, and 1 or more of the prior felony convictions are listed prior felonies, the court shall sentence the person to imprisonment for not less than 25 years."

offer. Defendant has not asserted in the trial court or on appeal that he had any viable challenge to his fourth-offense habitual-offender status. On the facts of this case, the prosecutor's failure to file a proof of service constituted a harmless error that does not require resentencing.

*Head* is largely analogous. The upshot is that defendant "had actual notice of the prosecutor's intent to seek an enhanced sentence and defendant was not prejudiced in his ability to respond to the habitual-offender notification." *Id*. at 544. And unlike in *Head*, *id*. at 546, the original felony information (in addition to the complaint) discussed the 25-year minimum sentence for violent felonies and explicitly stated that "[t]he minimum sentence must be at least 25 years." Resentencing is not required.

Affirmed.

/s/ Michael J. Kelly
/s/ Kathleen Jansen
/s/ Christopher M. Murray

-8-