*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

V

WILLIAM GRANT MANN,

        Defendant-Appellant.

UNPUBLISHED
February 10, 2026
11:52 AM

No. 370342
Lapeer Circuit Court
LC No. 2022-014196-FC

Before: RICK, P.J., and YATES and MARIANI, JJ.

PER CURIAM.

Defendant, William Grant Mann, was convicted by a jury of sexually abusing his daughter, TS, when she was young. Throughout the trial, the prosecution consistently argued that defendant committed the crime of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a) (victim under 13 years of age), by making TS perform fellatio on him. But the prosecution was less clear about the theory that supported the charge that defendant committed second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (victim under 13 years of age), with TS. Nonetheless, the jurors convicted defendant of both CSC-I and CSC-II, and defendant was sentenced to serve 25 to 40 years in prison for the CSC-I conviction, and 5 to 15 years in prison for the CSC-II conviction, to be served concurrently. On appeal, defendant challenges both of his convictions, but neither of his sentences. We affirm the conviction of CSC-I, but vacate the conviction of CSC-II and remand the case for further proceedings on the CSC-II charge only.

## I. FACTUAL BACKGROUND

TS was born in August 2001. She initially lived with her parents and siblings in a trailer. In December 2011, she moved with her family to a house in Lapeer. TS described her relationship with defendant as similar to "a boyfriend/girlfriend relationship." She said that, before her family moved, defendant told her to use a vibrator while he watched her. After TS and her family moved, TS explained that defendant would ask her, "[w]hat do I get in return?" if she wanted something. According to TS, defendant meant he "wanted a hand job or a blow job[,]" so TS would "rub [her] hand up and down his penis until he came." She testified that that first happened when she was "10 or 11" years old, and it took place "every couple weeks." TS stated that the abuse occurred in

defendant's bathroom, on his bed, or in a hot tub that was "in the master bedroom right next to the bathroom." TS testified that defendant "had me come into the hot tub with him clothingless, and he would have me give him a hand job as he touched my clitoris." TS's mother, T. Pack, testified that the hot tub in the master bedroom did not work until a year or two after the family moved into the house in Lapeer in December 2011.

TS also testified that defendant "would have [her] put [her] mouth on his penis" when she was 11 years old. She stated "he would grab the back of my head by my hair [and] push my head back and forth." TS further explained that when she was 11 years old, defendant "put his penis on my vagina" and had her "slide back and forth." According to TS, that occurred "in the bath tub of the master" bathroom, but Pack and TS's brother, WLM, testified that there was no bathtub in the master bathroom. During the time that the sexual activities were taking place, defendant told TS: "You can't say anything to anybody. If you do I'll get taken away from you. You don't want your dad being taken away from you, do you? What about your siblings? Just promise me you won't say anything."

TS testified that the assaults stopped when she was 13 years old because she started having periods, and defendant said to her "[t]hat's gross." Years later, in May 2021, TS moved out of her family's house and began going to counseling. She told her counselor "about some of the problems that I was having living on my own." When the counselor asked TS "what could trigger that," TS told her about defendant's abuse. TS initially indicated that she had not talked to defendant since she moved out, but she later stated that defendant did visit her house with her siblings.

Defendant was first charged in a criminal complaint filed in October 2021 with two counts of CSC-I, the first count under MCL 750.520b(1)(a) (victim under 13 years of age), and the second count under MCL 750.520b(1)(b)(*ii*) (victim between 13 and 16 years of age and defendant related to victim). At the preliminary examination, TS testified that defendant "asked me to perform oral sex" when she was "around nine" years old in "2008."[1] She stated that the incident when defendant "rubbed his penis against [her] vagina" took place when she was "[a]round nine or ten" years old. Based on that testimony, the district court permitted the prosecution to amend the second count to include a charge of CSC-II, under MCL 750.520c(1)(b)(*ii*) (victim between 13 and 16 years of age and defendant related to victim).

In March 2022, the prosecution filed a two-count information against defendant. Count 1 alleged CSC-I by "sexual penetration, to-wit: Defendant's Penis to Victim's Mouth, with a child under 13 years of age," whereas Count 2 charged "sexual contact" with TS, a "victim being at least 13 but less than 16 years of age. . . ." The prosecution filed a first amended information in February 2023. In that amended information, the CSC-I charge in Count 1 remained the same, alleging that defendant engaged "in sexual penetration, to-wit: entry into Victim's mouth by Defendant's Penis, with a child under 13 years of age . . . ." But the CSC-II charge in Count 2 was revised to accuse defendant of "sexual contact with a person under 13 years of age . . . ." The prosecution amended the information again before trial in November 2023. The second amended information contained the same CSC-I charge in Count 1, accusing defendant of engaging "in sexual penetration, to-wit: entry into Victim's mouth by Defendant's Penis, with a child under 13 years of age . . . ." Likewise,

---

[1] TS was born in 2001, so she could not have been nine years old in 2008.

Count 2 of the second amended information set forth the same CSC-II charge as the first amended information, alleging that defendant "did engage in sexual contact with a person under 13 years of age . . . ." Defendant's trial began one week after the second amended information was filed.

At defendant's trial, the trial court instructed the jury on the nature of the CSC-I charge in Count 1, stating that the prosecution had to prove "that the Defendant engaged in a sexual act that involved entry into [TS]'s mouth by the Defendant's penis." That language matched the allegation in Count 1 of the information. But the trial court's instructions on the CSC-II charge in Count 2 gave the jury two options, stating that "the prosecutor must prove . . . that Defendant intentionally touched [TS]'s genital area or intentionally made [TS] touch his genital area." The jury convicted defendant on both counts, and the trial court thereafter sentenced defendant to concurrent terms of imprisonment on the two counts of conviction.

After defendant appealed to this Court, he filed a motion in the trial court for a new trial or a *Ginther*[2] hearing. In that motion, defendant contended that his convictions were against the great weight of the evidence because TS's trial testimony "was heavily impeached and contradicted on key points." Defendant further asserted that his trial counsel was ineffective for: (1) not adequately impeaching TS; (2) not adequately impeaching Pack or moving for a mistrial; (3) not requesting a specific unanimity instruction; and (4) not moving to inspect TS's counseling records.[3] Defendant attached text messages that he and TS exchanged from May 2021 to August 2021, which defendant allegedly gave to his attorney before trial.

The trial court denied defendant's motion for a new trial or a *Ginther* hearing.[4] Addressing the claim about the great weight of the evidence, the trial court found that defendant had not shown a "compelling reason why the jury should have had serious doubts about [TS]'s credibility . . . ." Also, the trial court concluded that defense counsel was not ineffective because it was objectively reasonable not to impeach TS or Pack, and defense counsel's decision not to seek TS's counseling records was reasonable because he lacked a good-faith belief to request those records. Finally, the trial court determined that defense counsel's failure to request a specific unanimity instruction was deficient because the prosecution had presented evidence of materially distinct acts to support the CSC-II conviction, but defendant was not prejudiced because the evidence underlying his CSC-I conviction, i.e., that he forced TS to perform fellatio, similarly supported his CSC-II conviction.

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[3] Defendant also argued that the cumulative effect of the instances of ineffective assistance denied him a fair trial.

[4] Defendant moved in this Court for a remand, arguing a *Ginther* hearing was necessary to develop the record for appellate review, but this Court denied that motion "without prejudice to a case call panel of this Court determining that remand is necessary[.]" *People v Mann*, unpublished order of the Court of Appeals, entered July 9, 2025 (Docket No. 370342). For the reasons set forth in this opinion, we continue to see no need for a remand to properly adjudicate defendant's ineffective-assistance claim on appeal.

## II. LEGAL ANALYSIS

On appeal, defendant presents two issues. First, he asserts that both of his convictions were against the great weight of the evidence because TS's testimony was incredible and contradictory. Second, he requests a new trial because he claims that he received ineffective assistance of counsel from his trial attorney. We shall address those two arguments in turn.

## A. GREAT WEIGHT OF THE EVIDENCE

Defendant argues that both of his convictions were against the great weight of the evidence. A trial court's denial of a motion for a new trial based on the great weight of the evidence is subject to review for abuse of discretion. *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). "An abuse of discretion occurs when a trial court chooses an outcome falling outside the range of reasonable and principled outcomes." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009) (citation omitted). A jury's verdict is contrary to the great weight of the evidence only when "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Anderson*, 341 Mich App 272, 276-277; 989 NW2d 832 (2022) (quotation marks and citation omitted). Here, defendant has failed to demonstrate that his two convictions were against the great weight of the evidence because the credibility issues on which he bases his claim are insufficient grounds to warrant a new trial.

Defendant was convicted on charges of CSC-I and CSC-II. The elements of CSC-I are: "(1) the defendant engaged in sexual penetration, (2) with a person under 13 years of age." *People v Duenaz*, 306 Mich App 85, 106; 854 NW2d 531 (2014), citing MCL 750.520b(1)(a). " 'Sexual penetration' means . . . 'fellatio, . . . or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body . . . .' " *Duenaz*, 306 Mich App at 106, quoting MCL 750.520a(r). "The elements of CSC-II are: (1) the defendant engaged in sexual contact, (2) with a person under 13 years of age." *Duenaz*, 306 Mich App at 106, citing MCL 750.520c(1)(a). "Sexual contact" means "the intentional touching of the victim's or actor's intimate parts" if the "intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner . . . ." MCL 750.520a(q). TS testified that defendant committed several sexual acts constituting CSC-I, i.e., fellatio, or CSC-II, such as making TS touch defendant's penis, touching TS's genitals, and rubbing defendant's penis against TS's vagina. No evidence contradicted that testimony from TS. Consequently, defendant can only rely on the argument that TS's credibility was undermined by impeachment.

Credibility issues undermine a verdict only when the "testimony contradicts indisputable facts or laws," is "patently incredible or defies physical realities," is "material and . . . so inherently implausible that it could not be believed by a reasonable juror," or "has been seriously impeached and the case is marked by uncertainties and discrepancies." *People v Solloway*, 316 Mich App 174, 183; 891 NW2d 255 (2016) (quotation marks and citation omitted). TS's testimony does not even approach any of those stringent standards.

Defendant contends that TS's testimony was seriously impeached by Pack and WLM. TS said one of the incidents of sexual abuse, when defendant touched her genital area with his penis, occurred in a bathtub in the master bathroom. Pack and WLM testified that there was not a bathtub

in the master bathroom. By claiming that the testimony of Pack and WLM made it impossible for abuse to have occurred in the bathtub, defendant effectively asks this Court to find that Pack and WLM were telling the truth and TS was lying. Yet this Court cannot interfere with the jury's role of assessing witness credibility. *Id*. at 181-182. Further, any conflict in the witnesses' testimony was immaterial in establishing the elements of the offenses. The prosecution just had to prove that defendant committed sexual penetration or engaged in sexual contact with a person under 13 years of age. *Duenaz*, 306 Mich App at 106. Where the penetration or contact occurred is not an element of CSC-I or CSC-II.

Defendant's assertion that sexual abuse could not have occurred in the hot tub in the master bedroom also lacks merit. According to TS, the hot tub was one place where defendant forced her to touch his penis. Pack testified that, after the family moved in December 2011, the hot tub did not work for one to two years. TS never specifically stated that defendant assaulted her in the hot tub in 2011 or 2012. And even if her testimony contradicted Pack's testimony, where the assaults occurred was immaterial. Any inconsistency about the hot tub would only affect when the assaults occurred. The prosecution had to prove that TS was not yet 13 years old when the crimes occurred. *Duenaz*, 306 Mich App at 106. TS never claimed that the abuse started after she was 12 years old, and regardless of any inconsistencies in witness testimony regarding their timing, the record leaves no doubt that the sexual assaults ended before TS turned 13. And again, we see no basis to interfere with the jury's credibility assessments. See *Soloway*, 316 Mich App at 181-182. Defendant has not shown that the claimed discrepancies regarding the timing of the sexual assaults had any effect on the validity of the jury's verdicts.

Similarly, TS's inconsistent testimony about when the sexual abuse began and ended does not undermine the jury's verdicts. TS said that defendant started forcing her to touch his penis and perform fellatio after they moved into the house. TS initially said that her family moved when she was 10 or 11 years old, but later stated that they moved in 2013, when she was 11 or 12 years old. After Pack had her memory refreshed, she testified that the family moved in December 2011 when TS was 10 years old. TS also claimed that defendant stopped assaulting her at about the time her grandmother moved in, which Pack said was in 2013. None of that testimony reveals a material contradiction that would entitle defendant to a new trial. Whether defendant started abusing TS when she was 10, 11, or 12 years old was immaterial because TS never said the sexual abuse began after she was 13 years old. TS's inability to pinpoint exactly when defendant started abusing her does not entitle him to a new trial. Indeed, although inconsistencies about the dates of the offenses might "have affected the weight the jury chose to accord [TS's] testimony," those inconsistencies "would not necessarily have negated its substance[,]" so we may not "assume the jury's role of weighing the evidence or of assessing complainant's credibility." *People v Naugle*, 152 Mich App 227, 236; 393 NW2d 592 (1986).

Finally, defendant contends that TS's inability to remember when she stopped talking with defendant undermined her credibility. TS initially said that she stopped talking to defendant after she moved out of the family's house, but she acknowledged that defendant visited her new home. TS's contact with defendant after she moved out is completely unrelated to the elements necessary to sustain his convictions, i.e., whether he committed sexual penetration and sexual contact when TS was under 13 years of age. This Court can interfere with the jury's credibility assessment when witness testimony is seriously impeached or is material and inherently implausible. *Solloway*, 316 Mich App at 183. A single inconsistency over an immaterial issue does not justify interfering with

the jury's role. Because a reasonable jury could find that TS's testimony was credible, defendant's convictions were not against the great weight of the evidence.

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant contends he was denied effective assistance of counsel because his trial attorney (1) failed to adequately impeach TS, (2) failed to adequately impeach Pack or move for a mistrial, (3) failed to move to review counseling records of TS, and (4) failed to request a specific unanimity instruction. Defendant further asserts that the cumulative effect of all those instances of ineffective assistance of counsel denied him a fair trial. An ineffective assistance of counsel claim presents a mixed question of fact and constitutional law. *People v Hoang*, 328 Mich App 45, 63; 935 NW2d 396 (2019). This Court reviews the trial court's findings of fact for clear error, and constitutional issues are reviewed de novo. *Id*.

To obtain a new trial, defendant must first show that his counsel's performance "fell below an objective standard of reasonableness . . . ." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012) (citations omitted). Second, defendant must show that counsel's deficient performance prejudiced him, meaning that there must be "a reasonable probability that the outcome would have been different" if defense counsel had satisfied the constitutional standard of effective assistance. *Id*. (citations omitted). With these standards in mind, we shall address each of defendant's claims of deficient performance by his trial attorney.

## 1. IMPEACHMENT OF TS

Defendant argues that counsel should have attacked TS's credibility using her preliminary examination testimony and text messages, which revealed that TS stayed in contact with defendant after she left the family house, contrary to her trial testimony. This Court does not "second-guess counsel on matters of trial strategy," including "how to question witnesses" at trial. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008) (citations omitted). But counsel may be ineffective if counsel unreasonably fails to develop defenses by adequately impeaching the witnesses against the defendant. *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014).

During the preliminary examination, TS testified that defendant began abusing her in 2008, when she was seven years old, or when she was nine years old. TS did not say that abuse occurred in the bathtub in defendant's master bathroom, nor did she say that defendant forced her to touch his penis. But as we have already explained, those specific details about when and where defendant abused TS, and how long she stayed in contact with him, are immaterial to proving the elements of defendant's crimes.[5] As a matter of strategy, a trial attorney can choose not to impeach a witness "on all contradictory aspects" of the witness's testimony. *People v McFadden*, 159 Mich App 796, 800; 407 NW2d 78 (1987) (citation omitted). Here, trial counsel challenged TS's credibility

---

[5] Defendant provides no authority for his claim that TS's failure to testify about each alleged sexual act at the preliminary examination undermines TS's credibility. Because "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims," *People v Kelly*, 231 Mich App 627, 640-641; 508 NW2d 480 (1998), we decline to give any further consideration to that argument.

extensively during the trial, and defendant has failed to show that it was objectively unreasonable for counsel not to attempt to attack TS's credibility based upon each and every inconsistency and omission in her preliminary examination testimony and her text messages with defendant.

## 2. IMPEACHMENT OF PACK

Contrary to defendant's contention, his trial attorney did not perform deficiently by failing to impeach Pack or request a mistrial based on her allegedly incomplete testimony. At trial, Pack did not recall when the hot tub in the master bedroom was fixed. In posttrial proceedings, defense counsel alleged that Pack repeatedly told him the date on which the hot tub was fixed, although defense counsel never said what that date was. Further, Pack allegedly told defense counsel that she demanded that TS move out of the family home, but Pack did not testify about that during trial. Defendant insists that defense counsel should have asked Pack about their conversations. Beyond that, because defense counsel could not testify, pursuant to Michigan Rule of Professional Conduct MRPC 3.7, counsel should have demanded a mistrial because his inability to effectively impeach Pack undermined defendant's right to a fair trial. We find defense counsel's refusal to undertake such a maneuver objectively reasonable. To obtain a mistrial, the party seeking relief must show that "the error complained of is so egregious that the prejudicial effect can be removed in no other way." *People v Dickinson*, 321 Mich App 1, 18; 909 NW2d 24 (2017) (quotation marks and citation omitted). As we have explained, when the hot tub was fixed and the circumstances of TS moving out of the house were immaterial to proving defendant's crimes. Defense counsel need not highlight every single contradiction in a witness's testimony to provide effective assistance. *McFadden*, 159 Mich App at 800. A motion for a mistrial would have been meritless, and failing to raise a meritless argument is not ineffective assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

## 3. TS'S COUNSELING RECORDS

Defendant argues that his attorney should have moved to inspect TS's counseling records. A trial court may inspect privileged records *in camera* when a defendant establishes "a good-faith belief, grounded on some demonstrable fact, that there is a reasonable probability that the records are likely to contain material information necessary to the defense." *People v Stanaway*, 446 Mich 643, 677; 521 NW2d 557 (1994); see MCR 6.201(C)(2). Defendant contends that the information in WLM's affidavit created a reasonable probability of material information. Specifically, WLM stated that TS's allegations against defendant "were brought out by a counselor and questions that she had asked [TS]." TS told her counselor about defendant's abuse after the counselor asked her about issues she was having with living on her own. But information about the counseling session is immaterial to the defense because when or how a victim discloses sexual abuse is not an element of CSC-I or CSC-II. Neither WLM's affidavit nor TS's testimony offers any basis for defendant's suggestion that the counselor may have convinced TS to fabricate her abuse allegations. The mere statement that the counselor "brought out" the allegations does not furnish a good-faith belief that TS's allegations were fabricated. Had defense counsel moved to inspect TS's counseling records, the motion would have been denied because it was just based on "a hope of corroborating evidence, untethered to any articulable facts." *People v Davis-Christian*, 316 Mich App 204, 213; 891 NW2d 250 (2016). Defense counsel was not deficient for failing to make a meritless argument like that. *Ericksen*, 288 Mich App at 201.

## 4. SPECIFIC UNANIMITY INSTRUCTION

Defendant asserts that his attorney performed ineffectively by failing to request a specific unanimity instruction on the CSC-II charge,[6] and the trial court agreed that the failure to make that request constituted deficient performance. A jury verdict must be unanimous, MCR 6.410(B), and the trial court instructed the jurors that they had to reach a unanimous verdict. If "the state offers evidence of multiple acts by a defendant, each of which would satisfy the *actus reus* element of a single charged offense, the trial court is required to instruct the jury that it must unanimously agree on the same specific act if the acts are materially distinct or if there is reason to believe the jurors may be confused or disagree about the factual basis of the defendant's guilt." *People v Cooks*, 446 Mich 503, 530; 521 NW2d 275 (1994).

Analyzing defendant's motion for a new trial, the trial court forthrightly acknowledged that "the court's instructions to the jury on the elements of criminal sexual conduct in the second degree were insufficient because they permitted the jury to find the defendant guilty if each member of the jury was convinced the defendant either touched the victim's genitals or had the victim touch his genitals, but did not require the jury to make a unanimous finding that he touched her or she touched him." Thus, the trial court ruled that "[t]rial counsel's performance was . . . deficient for failing to request a specific unanimity instruction." We agree with the trial court's analysis and its conclusion that defendant's trial counsel provided deficient representation in that respect.

We part ways with the trial court, however, on the issue of prejudice flowing from defense counsel's deficient performance. The trial court determined that the lack of a specific unanimity instruction did not prejudice defendant because the evidence supporting defendant's conviction of CSC-I, i.e., that defendant forced TS to perform fellatio, also supported a CSC-II conviction. The same evidence can support convictions of CSC-I and CSC-II. *Duenaz*, 306 Mich App at 107. But here, the trial court instructed the jurors that, to convict defendant of CSC-II, they had to find that defendant "intentionally touched [TS's] genital area or intentionally made [TS] touch his genital area." Those two options did not include fellatio, which was mentioned only in the explanation of the CSC-I charge in Count 1. Because jurors are presumed to follow their instructions, *People v Leffew*, 508 Mich 625, 654; 975 NW2d 896 (2022), the jury could not have convicted defendant of CSC-II based upon the same evidence that supported his CSC-I conviction. Consequently, we conclude that defendant was prejudiced by his trial counsel's failure to request a specific unanimity instruction on Count 2 only, so we vacate defendant's conviction of CSC-II and remand for further proceeding on that count only. Defendant's CSC-I conviction on Count 1 is affirmed because a specific unanimity instruction was not warranted as to the CSC-I charge in Court 1.

Affirmed in part, vacated in part, and remanded for further proceedings on Count 2 only. We do not retain jurisdiction.

/s/ Michelle M. Rick
/s/ Christopher P. Yates
/s/ Philip P. Mariani

---

[6] Defendant properly does not fault his attorney for failing to seek a specific unanimity instruction on CSC-I because the prosecution and the trial court described that charge as based only on fellatio.