*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ANTHONY VERNARD LOFTON,

Defendant-Appellant.

UNPUBLISHED
May 13, 2026
10:49 AM

No. 366762
Kent Circuit Court
LC No. 22-002012-FH

Before: MURRAY, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

Defendant appeals by right his jury trial conviction of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(c) (victim was mentally incapable, mentally incapacitated, or physically helpless). Defendant was sentenced, as a fourth-offense habitual offender, MCL 769.12, to 11 to 30 years' imprisonment. Finding no errors warranting reversal, we affirm.

## I. FACTUAL BACKGROUND

This case arises from an allegedly nonconsensual sexual encounter that occurred between defendant and the complainant. At that time, both were employed at Gipper's Restaurant and Bar in Grand Rapids, Michigan. The complainant, age 23, worked as a line cook. Defendant, age 52, informally assisted as a bouncer and barback due to his relationship with the restaurant's operator, Danny Waterman. Both denied any prior romantic or sexual relationship.

On the evening of November 2, 2019, the complainant completed her shift and remained at the bar for a drink. Defendant, who was working, joined her. The complainant did not have a vehicle and typically relied on others for transportation. Defendant indicated that he intended to attend a party after work and agreed to drive the complainant home afterward. The complainant had initially arranged to be driven home after work but told a coworker that she instead planned to go to the party with defendant.

Defendant and the complainant departed Gipper's at approximately 2:00 a.m. Other witnesses at Gipper's described defendant and the complainant as friendly coworkers without any apparent romantic or physical relationship. A bartender testified that she did not observe any

-1-

inappropriate behavior between them and that the complainant appeared "buzzed but not drunk" when she left the bar with defendant. Although the complainant testified that she did not feel significantly intoxicated at that time, she stated that she blacked out after entering defendant's vehicle and had no memory of the subsequent events.

Defendant testified that he first drove the complainant to a party hosted by a friend named Andrew Dykema. He stated that the complainant performed oral sex on him while he was driving. He further testified that they remained at the party for approximately 25 minutes. Thereafter, while sitting in his vehicle, defendant attempted to determine the complainant's address, but she would not provide it. According to defendant, the complainant then initiated sexual intercourse, which occurred in the vehicle. Defendant further testified that he continued driving the complainant around Grand Rapids while attempting to determine where she lived. When she would not respond, he eventually parked in a motel lot near Gipper's to sleep, but his vehicle became stuck in mud. He contacted a friend, Rodney Greiner, for assistance. After the vehicle was freed, defendant resumed driving. The complainant indicated she needed to use the restroom. She then placed her foot on the windshield and cracked it before urinating in the car. Defendant removed her from the vehicle and left her in a parking lot.

The complainant testified that she awoke hours later in an unfamiliar vehicle in a different location, partially disoriented, missing a shoe, and with visible injuries, including abrasions and bruising. She had no recollection of how she arrived there or what had occurred after entering defendant's vehicle. She later sought medical treatment, including a sexual-assault examination. DNA evidence established that defendant's DNA was present in the complainant's vaginal area. Detective Kevin Snyder of the Grand Rapids Police Department testified that at 3:15 p.m., the complainant had a blood alcohol content (BAC) of 0.156, which is nearly twice the legal limit. Detective Snyder inferred it was likely that the complainant's BAC was substantially higher the night before, when the sexual incident occurred. Tetrahydrocannabinol (THC)[1] was also detected in the complainant's blood sample.

Defendant was later arrested in connection with the incident. Valerie Foster was appointed as trial counsel. During trial, defendant moved for a directed verdict, arguing that the prosecution failed to present sufficient evidence of the charged offense. The trial court denied the motion, concluding that the evidence was sufficient to submit the case to the jury. After a four-day jury trial, defendant was convicted of CSC-III. He subsequently moved for a new trial, asserting ineffective assistance of counsel and requesting a *Ginther*[2] hearing. The trial court denied the motion. Defendant then moved this Court to remand the matter for an evidentiary hearing, which we granted. *People v Lofton*, unpublished order of the Court of Appeals, entered January 30, 2025 (Docket No. 366762). After a two-day evidentiary hearing, the trial court again denied defendant's motion, concluding that counsel was not ineffective. Defendant thereafter filed a supplemental brief on appeal following remand raising the same issues. This appeal followed.

---

[1] "Tetrahydrocannabinol, or THC, is the physiologically active component of marijuana." *People v Koon*, 494 Mich 1, 3 n 3; 832 NW2d 724 (2013).

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

## II. ANALYSIS

## A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that the trial court erred by denying his motion for a new trial because trial counsel was ineffective in several respects. We disagree.

Claims of ineffective assistance of counsel present a mixed question of fact and constitutional law. *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021). "All findings of fact are reviewed for clear error, while the legal questions are reviewed de novo. When the reviewing court is left with a definite and firm conviction that the trial court made a mistake, there is clear error." *Id*. (quotation marks and citations omitted).

"The United States and Michigan Constitutions protect a criminal defendant's right to a fair trial," which includes the right to receive the effective assistance of counsel. *Isrow*, 339 Mich App at 531. See also US Const, Am VI; Const 1963, art 1, § 20. "Trial counsel's performance is presumed to be effective, and defendant has the heavy burden of proving otherwise." *Isrow*, 339 Mich App at 531. To succeed on a claim of ineffective assistance of counsel,

> a defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. [*People v Ogilvie*, 341 Mich App 28, 34; 989 NW2d 250 (2022) (quotation marks and citations omitted).]

"A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quotation marks and citation omitted). "There is a strong presumption that trial counsel's decision-making is the result of sound trial strategy," and "[i]f counsel's strategy is reasonable, then his or her performance was not deficient." *Isrow*, 339 Mich App at 532 (quotation marks and citations omitted).

## 1. FAILURE TO CALL WITNESSES

Defendant first argues that Foster was ineffective for failing to investigate and call Andrew Dykema, Rodney Greiner, Jeffrey Lewis, and Danny Waterman to support his defense at trial. "Counsel always retains the duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012) (quotation marks and citation omitted). "[A] claim of ineffective assistance of counsel premised on the failure to call witnesses is analyzed under the same standard as all other claims of ineffective assistance of counsel . . . ." *People v Allen*, 507 Mich 856, 856 (2021). Decisions regarding whether to call or question a witness are presumed to be a matter of trial strategy. *People v Solloway*, 316 Mich App 174, 189; 891 NW2d 255 (2016) (quotation marks and citation omitted).

At the evidentiary hearing, defendant testified that he alerted Foster to potential witnesses who could corroborate his defense, but she failed to contact them despite his repeated requests. Foster explained her general strategy for determining whether to contact a witness, stating that the decision depended on "the charge itself and the relevance factor." Because credibility was a

significant issue in defendant's case, Foster did not want to call any witnesses who the prosecution could use to "refute, diminish, [or] challenge [her] client's credibility." Further, she did not want to present any witnesses who would testify about irrelevant matters or corroborate the prosecution's theory that the complainant was getting progressively intoxicated on the night of the incident.

Foster's decision not to further investigate or call these witnesses did not fall below an objective standard of reasonableness. As the record reflects, each witness's proposed testimony either had limited relevance or risked undermining defendant's credibility by establishing the complainant's significant intoxication or contradicting defendant's version of events. Even where testimony would have provided limited corroboration, it also introduced substantial impeachment risk. Notably, several of the proposed witnesses would have provided testimony that conflicted with defendant's account that the complainant was coherent and not significantly impaired. Such testimony would have undermined, rather than supported, defendant's theory of the case. Under these circumstances, defendant has not established deficient performance or prejudice. Moreover, the trial court denied defendant's motion for a directed verdict, concluding that sufficient evidence existed to submit the case to the jury. This determination further undermines defendant's claim that the absence of additional witness testimony created a reasonable probability of a different outcome.

## 2. FAILURE TO PRODUCE EVIDENCE

Defendant next argues that Foster was ineffective for failing to produce a photograph of his broken windshield as corroborative evidence at trial. "The decision of what evidence to present is also presumed to be a matter of trial strategy." *Solloway*, 316 Mich App at 190. The circumstances regarding Foster's knowledge of the photograph are unclear. At the evidentiary hearing, defendant testified that he told Foster he had a picture of his damaged windshield on an inoperable cell phone, and she offered to have an Information Technology (IT) employee attempt to fix it. While Foster eventually remembered defendant indicating that he had a photograph, she denied that her office had IT personnel to fix defendant's phone.

Even if Foster's failure to obtain the photograph fell below an objective standard of reasonableness, defendant cannot establish a reasonable probability that the result of the proceedings would have been different if the photograph had been admitted at trial. The photograph was admitted as an exhibit at the evidentiary hearing and depicts a Samsung phone displaying a photograph taken from the inside of a vehicle that appears to have a horizontal line or crack running across the middle of the windshield. It is unlikely that the photograph would have changed the result of the proceedings. Photographic evidence of a damaged windshield has limited to no relevance regarding the primary issue in this case, namely whether defendant sexually assaulted the complainant. Moreover, the photograph itself does not establish that the car depicted belonged to defendant, when the damage actually occurred, and whether the complainant was the cause of the damage. Accordingly, defendant cannot establish that he was prejudiced as a result of Foster's failure to produce the photograph at trial.

Defendant stresses that the foregoing witness testimony and photograph were crucial to establishing his credibility because the prosecutor specifically attacked the veracity of defendant's version of events at trial and highlighted his lack of corroborative evidence. During closing

argument, the prosecutor suggested that defendant's version of events was fabricated and emphasized defendant's failure to produce corroborative evidence of his damaged car or call witnesses to testify on his behalf. While this may have impacted the jury's credibility assessment, the trial court specifically instructed the jury that "[t]he lawyers' statements and arguments and commentary are not evidence." Notably, "[j]urors are presumed to follow their instructions, and jury instructions are presumed to cure most errors." *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020) (quotation marks and citation omitted). Thus, defendant's argument on this point lacks merit.

### 3. UTTERING AND PUBLISHING

Defendant also argues that Foster was ineffective for introducing his 2006 uttering-and-publishing conviction during direct examination. The parties had previously discussed the admissibility of defendant's uttering-and-publishing conviction. The prosecutor ultimately agreed not to use the conviction as a basis for impeaching defendant. Defense counsel testified at the *Ginther* hearing that she had defendant testify about the conviction. She wanted to bring it to light to mitigate the impact of the conviction on the jury. In other words, she determined it would be better to introduce the prior conviction rather than let the jury speculate about defendant's arrest. In essence, it was trial strategy. Even if we were to agree that defense counsel's performance fell below an objective standard of reasonableness in this respect (which we do not find to be the case here), defendant has not demonstrated prejudice. Foster's reference to his prior conviction was brief, not emphasized, and not exploited by the prosecution. There is no indication that it affected the verdict. Accordingly, defendant is not entitled to relief.

### 4. ADVICE TO LIMIT TESTIMONY

Defendant also contends that Foster was ineffective for advising him not to testify about receiving oral sex from the complainant. During cross-examination, defendant admitted that the complainant performed oral sex on him but stated that he "didn't want to mention it" because he did not want to get her in trouble. On redirect, Foster asked defendant why he did not mention the oral-sex incident. Defendant reiterated that he did not want to get the complainant in trouble and said it was something that he was not proud of. During closing argument, Foster explained to the jury that she was "going to take a little responsibility" for defendant not testifying about the oral sex. Her client was relying on counsel's legal argument that it was not at issue in the case. She stated that if the jury was "going to blame anybody" for defendant's lack of testimony on the matter, it should blame her.

At the *Ginther* hearing, Foster further explained that she advised defendant not to testify about engaging in oral sex with the complainant. She made that decision based on her assessment of "reality factors," namely, DNA-test results, which did not reveal any of defendant's DNA in the complainant's mouth. Foster also explained that she did not think it was realistic for the complainant to have performed oral sex on defendant given his larger size and the fact that he drove a small vehicle at the time of the incident. Foster characterized her advice as a judgment call and believed that defendant's testimony about oral sex would have been implausible, diminished his credibility, and painted defendant in a negative light to the jury. These are legitimate considerations. Additionally, Foster did not think there was any reason to elicit the testimony because the prosecution did not charge defendant on the basis of an oral-sex act. On

this record, Foster's decision did not fall below an objective standard of reasonableness. It was grounded in strategic considerations, including the absence of supporting DNA evidence and concerns regarding plausibility and credibility. This decision fell within the wide range of reasonable professional judgment, and defendant has not shown prejudice.

## 5. MISTRIAL

Defendant contends that Foster was ineffective for failing to move for a mistrial after he heard an out-of-court statement about his case. "A motion for a mistrial should be granted only for an irregularity that is prejudicial to the rights of the defendant and impairs the defendant's ability to get a fair trial." *People v Dickinson*, 321 Mich App 1, 18; 909 NW2d 24 (2017) (quotation marks and citation omitted).

After closing arguments, Foster informed the trial court that outside of the courthouse, defendant saw the trial court clerk speaking with a local defense attorney, and the attorney mentioned something about the "Gipper's case." The clerk was present in the courtroom and explained that she did not talk to the attorney about defendant's case. Instead, the attorney saw Foster and asked whether she was in trial on the Gipper's case. The clerk and Foster did not notice any jurors in earshot. The trial court therefore determined there was no evidence to suggest that the jury was tainted by the comment. At the evidentiary hearing, Foster only vaguely remembered the out-of-court comment, but did not feel it rose to the occasion of moving for a mistrial because she did not see any jurors around when the statement was made, and the statement was not one that warranted an inquiry with the jury. Defendant also testified that all he overheard was the comment "Gipper's case," and said that he did not notice any nearby jurors. The trial court clerk testified consistent with her explanation at trial.

Foster's decision not to move for a mistrial based on the out-of-court statement did not fall below an objective standard of reasonableness. There was no evidence that jurors heard the comment or that it conveyed prejudicial information. Counsel was not ineffective for declining to pursue a futile motion. See *Isrow*, 339 Mich App at 532 ("Failure to raise a futile objection or advance a meritless argument does not constitute ineffective assistance of counsel.").

## 6. CUMULATIVE ERRORS

Defendant lastly contends that the cumulative effect of the foregoing errors entitles him to a new trial. "The cumulative effect of several minor errors may warrant reversal where the individual errors would not. However, in order to reverse on the basis of cumulative error, the effect of the errors must [be] seriously prejudicial in order to warrant a finding that defendant was denied a fair trial." *People v Ackerman*, 257 Mich App 434, 454; 669 NW2d 818 (2003) (quotation marks and citations omitted; alteration in original). As discussed above, even if we assumed Foster erred only by eliciting testimony regarding defendant's prior conviction, and defendant could not establish that he was prejudiced by that error. Therefore, defendant has not established any cumulative error or serious prejudice that would entitle him to a new trial.

B. SUFFICIENCY AND WEIGHT OF THE EVIDENCE

Defendant next argues that there was insufficient evidence to support his CSC-III conviction. Alternatively, he maintains that the jury's verdict was against the great weight of the evidence. We disagree.

On appeal, a claim of insufficient evidence is reviewed de novo in the light most favorable to the prosecution. *People v Lowrey*, 342 Mich App 99, 122; 993 NW2d 62 (2022). We must "determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *Id*. (quotation marks and citation omitted). In making this determination, "this Court must defer to the fact-finder's role in determining the weight of the evidence and the credibility of the witnesses." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime." *Id*. "All conflicts in the evidence must be resolved in favor of the prosecution." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

"We review for an abuse of discretion a trial court's grant or denial of a motion for a new trial on the ground that the verdict was against the great weight of the evidence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). "An abuse of discretion occurs when a trial court chooses an outcome falling outside the range of reasonable and principled outcomes." *Id*.

Beginning with defendant's sufficiency challenge, "MCL 750.520d(1)(c) provides that a person is guilty of CSC III if he or she engages in sexual penetration with another person whom he or she knew or had reason to know was mentally incapable, mentally incapacitated, or physically helpless." *People v Cox*, 268 Mich App 440, 443; 709 NW2d 152 (2005). On appeal, defendant challenges only whether the evidence was sufficient to establish the complainant's mental incapability, mental incapacitation, or physical helplessness. The definitions of these terms are provided by statute:

> (j) "Mentally incapable" means that a person suffers from a mental disease or defect that renders that person temporarily or permanently incapable of appraising the nature of his or her conduct.

> (k) "Mentally incapacitated" means that a person is rendered temporarily incapable of appraising or controlling the person's conduct due to the influence of a narcotic, anesthetic, alcohol, or other substance, or due to any act committed upon that person without the person's consent.

> * * *

> (m) "Physically helpless" means that a person is unconscious, asleep, or for any other reason is physically unable to communicate unwillingness to an act. [MCL 750.520a(j), (k), and (m).]

Notably, the prosecution did not pursue an incapability theory at trial based on any mental disease suffered by the complainant.

The prosecution presented sufficient evidence that the complainant was mentally incapacitated or physically helpless when the sexual incident with defendant occurred. The jury considered evidence that at the time of the incident, the complainant was smoking marijuana daily and taking prescription medications, including a stimulant and an antidepressant. The complainant testified that on the evening of the incident, she had a few drinks at Gipper's, including a shot, a Long Island iced tea, and a beer. She recalled feeling "tipsy" when she left the bar with defendant, but did not remember being "sloppy" or "stumbling over her feet." After leaving Gipper's, the complainant blacked out and could not remember anything after getting into defendant's car. Even defendant's own testimony described behavior consistent with significant impairment. Defendant testified that the complainant fell on multiple occasions, was unable or unwilling to provide her address despite repeated requests, and engaged in erratic conduct throughout the evening. He further described behavior including kicking the vehicle and urinating in the car. This testimony supports an inference that the complainant was not in control of her faculties.

The complainant testified that the next morning, at about 11:00 a.m., she woke up in an unknown car with no recollection of the evening's events. She noticed scabs on her knees and elbows. Blood testing revealed that the complainant's blood alcohol content (BAC) was approximately 0.156, nearly twice the legal limit. Testimony further indicated that her BAC would have been higher at the time of the incident. The test also indicated the presence of THC in her bloodstream. Accordingly, the jury could reasonably infer that the complainant's level of intoxication at the time of the sexual encounter was even greater than reflected by the later test results.

The foregoing testimony presents overwhelming circumstantial evidence from which a rational trier of fact could find beyond a reasonable doubt that the complainant was mentally incapacitated and physically helpless at the time of the sexual contact. The evidence supports that the complainant was impaired to the point of losing her memory and losing control of her physical actions. Based on the foregoing evidence, a rational factfinder could conclude that the complainant's intoxication rendered her "temporarily incapable of appraising or controlling [her] conduct" or consenting to a sexual act, MCL 750.520a(k), and "physically unable to communicate unwillingness to an act," MCL 750.520a(m).

Defendant relies heavily on the fact that the complainant blacked out and could not remember the incident. This position ignores the role of circumstantial evidence in the jury's determination of whether to convict defendant. See *Bennett*, 290 Mich App at 472 ("Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of the crime."). While the complainant may not have been able to specifically recall the sexual incident, the jury was permitted to reasonably infer that she was mentally incapacitated and physically helpless from the testimony that she was significantly intoxicated, lost her memory, and acted in a way consistent with a lack of control over her conduct and communication. Considering the evidence in the light most favorable to the prosecution, there was sufficient evidence to support defendant's CSC-III conviction.

Defendant also argues that the jury's verdict was against the great weight of the evidence. "The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Lacalamita*, 286 Mich App at 469. "Generally, a verdict may only be

vacated when the verdict is not reasonably supported by the evidence, but rather it is more likely attributable to factors outside the record, such as passion, prejudice, sympathy, or other extraneous considerations." *Solloway*, 316 Mich App at 183 (quotation marks and citation omitted). "[T]he resolution of credibility questions is within the exclusive province of the jury." *Lacalamita*, 286 Mich App at 470.

Defendant's argument that the verdict was against the great weight of the evidence is premised on a credibility challenge. He contends that his testimony was neither obviously unbelievable nor inherently implausible, and that the complainant's inability to recall events, standing alone, is insufficient to support a conviction in light of the fact that he offered a credible and reasonable account of what occurred. Notably,

> [q]uestions regarding credibility are not sufficient grounds for relief *unless* the "testimony contradicts indisputable facts or laws," the "testimony is patently incredible or defies physical realities," the "testimony is material and . . . so inherently implausible that it could not be believed by a reasonable juror," or the "testimony has been seriously impeached and the case is marked by uncertainties and discrepancies." [*Solloway*, 316 Mich App at 183, quoting *People v Lemmon*, 456 Mich 625, 643-644; 576 NW2d 129 (1998).]

The trial court did not abuse its discretion by denying defendant's motion for a new trial. Again, defendant relies on the complainant's lack of memory to advance his argument. However, "the resolution of credibility questions is within the exclusive province of the jury." *Lacalamita*, 286 Mich App at 470. Defendant misconstrues the applicable standards by arguing that the verdict was against the great weight of the evidence because his testimony was not patently incredible or inherently implausible. Instead, to be entitled to a new trial, defendant was required to establish that the testimony in support of the verdict was subject to one of the foregoing circumstances. *Solloway*, 316 Mich App at 183. Defendant fails to advance any argument that the complainant's testimony contradicted indisputable facts or laws, was patently incredible, inherently implausible, or seriously impeached. See *id*. Accordingly, his credibility argument does not establish a sufficient ground for a new trial.

Affirmed.

/s/ Christopher M. Murray
/s/ James Robert Redford
/s/ Michelle M. Rick

-9-